EL PUEBLO DE PUERTO RICO, apelado, *v.* ANÍBAL FLORES BETANCOURT, acusado y apelante.

*Número:* CR-87-81 *Resuelto:* 7 de diciembre de 1989

*Héctor Landrón Hernández*, abogado del apelante; *Norma Cotti Cruz, Subprocuradora General*, y *Blanca A. Díaz Segarra, Procuradora General Auxiliar*, abogadas de El Pueblo.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Esta apelación nos permite examinar la responsabilidad criminal por el delito de falsificación de documentos a la luz de un cuadro de hechos que configuran una patente violación a la Ley Notarial de Puerto Rico y a la fe pública que intrínsecamente acompaña al ejercicio del notariado.

El abogado y notario Aníbal Flores Betancourt fue acusado y convicto del delito de falsificación de documentos (Art. 271 del Código Penal, 33 L.P.R.A. sec. 4591). De acuerdo con el pliego acusatorio, el licenciado Flores, "con la intención de defraudar a Margarita González Delgado, falsamente imitó la firma del señor Víctor M. Martínez Hernández en la registración [sic] [de un] vehículo [de motor]". La falsificación se produjo en el curso del traspaso de la licencia de un camión a favor de Noemí Nieves Pérez, en cuyo trámite el apelante intervino como notario público.

Un panel de jurados lo encontró culpable por unanimidad y el tribunal, por voz de la Hon. Juez Crisanta González de Rodríguez, lo sentenció a cumplir nueve (9) años de presidio bajo el régimen de sentencia suspendida.(1) De esta sentencia apela ante este Tribunal.

---

(1) Luego de resultar convicto de este delito que implica depravación moral, decretamos el 11 de septiembre de 1987 su separación permanente del ejercicio de la abogacía. *In re Flores Betancourt*, 119 D.P.R. 479 (1987). Ya previamente lo habíamos separado del ejercicio del notariado por los mismos hechos de los cuales aquí apela. *In re Flores Betancourt*, 117 D.P.R. 150 (1986). Tomamos conocimiento judicial de que al momento de ser separado de la abogacía el apelante

En su alegato el apelante plantea la comisión de tres (3) errores:

PRIMER ERROR:

Incidió el tribunal de instancia al declarar sin lugar una solicitud de absolución perentoria fundada en que el Ministerio Público no estableció el elemento esencial de la intención criminal de defraudar.

SEGUNDO ERROR:

Erraron los señores del jurado al encontrar culpable al aquí apelante a base de una prueba que no estableció más allá de toda duda razonable que existiera intención específica de defraudar.

TERCER ERROR:

La prueba de cargo descansó únicamente en la confesión no corroborada del apelante, por lo que procedía absolver perentoriamente al acusado. Alegato del apelante, pág. 7.

Por los fundamentos que se exponen a continuación, confirmamos la sentencia dictada por el Tribunal Superior, Sala de Carolina.

I

Examinemos la prueba desfilada con algún detalle. El primer testigo de cargo, Víctor Manuel Martínez Nieves, declaró que el 15 de junio de 1984 le vendió un camión de su propiedad al Sr. Carlos Miguel López Nieves. Al señor Martínez Nieves se le mostró la licencia del vehículo, la cual tenía evidenciado al dorso un traspaso a favor de Noemí Nieves, y señaló que la firma que aparecía allí no era la suya, que nunca había realizado dicho traspaso y que jamás estuvo en

---

tenía pendiente ante este Tribunal dos (2) casos disciplinarios por hechos no relacionados con el presente recurso: una querella presentada por el Procurador General (Núm. CE 86–591), la cual ya estaba sometida para nuestra resolución final, y la consideración de un Informe de Conducta Profesional (Núm. MC 87–19).

la oficina del licenciado Flores Betancourt, quien aparece en dicho documento como el notario autorizante del afidávit. La licencia fue admitida como prueba por estipulación de las partes. También, por acuerdo entre las partes, se admitió una certificación expedida por el Colector de Rentas Internas de la Colecturía de Vega Alta, en la cual se asevera que el 15 de junio de 1984 se efectuó la venta y traspaso del referido camión a favor de Carlos M. López Nieves ante el funcionario correspondiente en dicha colecturía.

La segunda testigo de cargo fue Margarita González Delgado, viuda de Carlos M. López Nieves, fallecido el 30 de agosto de 1984. Relató que después de la muerte de su esposo se enteró que la licencia del camión que su difunto marido le había comprado al Sr. Víctor Martínez aparecía en el Registro de Vehículos de Motor del Departamento de Transportación y Obras Públicas a nombre de Noemí Nieves. Añadió que Noemí Nieves era la amante de su esposo y que vivía con él desde hacía algún tiempo ya que ella se encontraba separada.

Explicó que poco después de la muerte de su marido, Noemí Nieves fue a reclamar el camión aduciendo que le pertenecía. Luego de comprobar con el dueño anterior que su difunto consorte efectivamente había realizado la compraventa, acudió al juez de Canóvanas quien la refirió a la Fiscalía para que presentara la correspondiente denuncia.

La tercera testigo de cargo fue la Hon. Lourdes Velázquez Cajigas, Juez del Tribunal de Distrito. Declaró que presidió la vista preliminar en contra de Noemí Nieves por el delito de apropiación ilegal agravada. En dicha vista el apelante fue testigo de cargo. Señaló la juez que en el contrainterrogatorio al licenciado Flores, *el letrado admitió haber firmado por otra persona el traspaso de la referida licencia de conducir*. El apelante, además, dijo en aquella vista que había notarizado el documento de traspaso.

El testimonio de la magistrado fue reafirmado esencialmente por la declaración del cuarto testigo de cargo, el Fiscal Aurelio Miró Carrión, quien investigó el caso de Noemí Nieves e intervino en la vista preliminar que se celebró en su contra. El Fiscal Miró relató cómo el licenciado Flores inicialmente sostuvo que una de las personas que acompañaron a Noemí Nieves a su oficina fue la que firmó el traspaso. Más tarde, durante el interrogatorio, el aquí apelante cambió su versión en aquella vista y admitió que le dio "pena" y firmó el traspaso "como el vendedor y como Notario" en ausencia de las personas que concurrieron a su oficina. E.N.P., pág. 8.

Finalmente se estipuló la declaración del testigo Carlos Vélez, representante del Departamento de Transportación y Obras Públicas, a los efectos de que la referida licencia de vehículo de motor estaba radicada en el Registro de Vehículos de Motor del Departamento de Transportación y Obras Públicas y que en virtud de dicho documento se inscribió el vehículo a nombre de Noemí Nieves.

Luego del desfile de la prueba de cargo, la defensa solicitó sin éxito la absolución perentoria del acusado. Se procedió entonces a llamar como único testigo de defensa al apelante Flores Betancourt.[2] Éste relató que un día llegó Noemí Nieves a su oficina. Ella le explicó que su marido había muerto[3] y que quería traspasar a su favor un camión, pero que en el Departamento de Transportación y Obras Públicas le pedían una declaratoria de herederos. El apelante explicó que creyó que ella era una persona seria y creíble, por lo que procedió a firmar por el vendedor aunque sabía que violaba la Ley Notarial de Puerto Rico. E.N.P., págs. 9 y 11.

---

[2] El apelante insistió en ocupar la silla de los testigos en contra de la recomendación de su representación legal.

[3] Aunque Noemí Nieves aparentemente nunca se lo dijo, el apelante pensó que ella era la viuda de Víctor Martínez Hernández, el titular registral del camión. Véase E.N.P., págs. 9 y 11.

En el contrainterrogatorio, no obstante, el apelante aclaró que Noemí Nieves fue a la oficina con otras dos (2) personas, una de las cuales inicialmente se hizo pasar por el vendedor. Indicó que le pidió al alegado vendedor la licencia y la tarjeta de seguro social, y al no poder "bregar con él", Noemí le dijo lo que él creyó era la "verdad". E.N.P., pág. 10.

Explicó que luego de orientarla sobre el procedimiento de declaratoria de herederos, ella le dijo que no tenía dinero para su tramitación. En esas circunstancias dijo haber creído de "buena fe" que el camión sólo tenía un valor residual, aunque admitió nunca haberlo visto. Cobró honorarios por sus servicios. Al decidir proceder con la imitación de la firma en el traspaso, dijo que sólo "[q]uería ayudar a la viuda . . .". E.N.P., pág. 12.

## II

■ El Art. 271 del Código Penal, *supra*, dispone que:

Toda persona que *con intención de defraudar a otra* hiciere, en todo o en parte, un documento, instrumento o escrito falso, mediante el cual se creare, transfiriere, terminare o de otra forma afectare cualquier derecho, obligación o interés, o que falsamente alterare, limitare, suprimiere o destruyere, total o parcialmente, uno verdadero, será sancionada con pena de reclusión por un término fijo de nueve (9) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de catorce (14) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años. (Énfasis suplido.)

■ Este delito tiene dos (2) modalidades: "(1) hacer en todo o parcialmente un documento, instrumento o escrito falso y (2) alterar, imitar, suprimir o destruir, total o parcialmente uno verdadero. [Dicho] documento falso [podría] crear, transferir, terminar o afectar cualquier derecho, obligación o interés." (Énfasis suprimido.) *Pueblo v. Uriel Álvarez*, 112 D.P.R. 312, 321 esc. 4 (1982). No obstante, la médula

del delito consiste en la intención de perjudicar, causar daño o defraudar a otra persona con pleno conocimiento de la falsedad del escrito. *Pueblo v. Oliver Frías*, 118 D.P.R. 285 (1987); *Pueblo v. Rivera*, 69 D.P.R. 411, 413 (1948); *Pueblo v. Perazza*, 53 D.P.R. 588, 590 (1938), reafirmado en *Pueblo v. Uriel Álvarez*, supra.

En su primera modalidad se requiere no sólo hacer el documento falso con la intención de defraudar, sino también que dicho escrito pueda objetivamente crear, transferir, terminar o afectar algún derecho, obligación o interés de otra persona. D. Nevares-Muñiz, *Código Penal de Puerto Rico: revisado y comentado*, San Juan, Ed. Rev. C. Abo. P.R., 1986, pág. 442. "El delito se consuma tan pronto se hace el documento con las características y la intención antes descrita." Íd.

En este caso el apelante no niega el hecho de que al imitar la firma de otra persona produjo un documento falso que sin duda podía transferir un derecho o interés. No obstante, argumenta que el Ministerio Público no estableció el elemento básico del delito: la intención de defraudar. No tiene razón.

Como regla general, nadie puede ser responsabilizado por una acción u omisión que ha sido tipificada previamente como delito si la misma no se realiza con intención o negligencia criminal.(4) Art. 14 del Código Penal, 33 L.P.R.A.

---

(4) Esta regla tiene su excepción en los llamados "delitos de responsabilidad absoluta u objetiva". La Asamblea Legislativa puede válidamente eliminar el elemento mental de la tipificación de los delitos. *Pueblo v. Bou*, 64 D.P.R. 466 (1945). Siempre que no haya dudas sobre la intención del legislador, los tribunales permitirán que el Estado sea relevado de la prueba de intención criminal. *Morrisette v. United States*, 342 U.S. 246 (1952). Se permite la constitución de estos delitos en aquellos casos donde el interés público predomina sobre la intención o negligencia que pueda tener la persona afectada. D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Hato Rey, Ed. Inst. Desarrollo del Derecho, 1983, Sec. 5.6.3, pág. 156 n. 3.

sec. 3061. La intención criminal se define de dos (2) formas en el Art. 15 del Código Penal, 33 L.P.R.A. sec. 3062:

El delito es intencional:

(a) Cuando el resultado ha sido previsto y querido por la persona como consecuencia de su acción u omisión; o

(b) Cuando el resultado sin ser querido ha sido previsto o pudo ser previsto por la persona como consecuencia natural o probable de su acción u omisión.

■ Por otro lado, la negligencia criminal ocurre cuando se produce "un resultado delictuoso sin [querer], por imprudencia o descuido, o falta de circunspección o impericia o por inobservancia de la ley". Art. 16 del Código Penal, 33 L.P.R.A. sec. 3063.

■ Nuestro Código Penal no tiene reglas para determinar qué elemento mental es requerido para cada delito. D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Hato Rey, Ed. Inst. Desarrollo del Derecho, 1983, Sec. 5.6.3, pág. 156. Para determinar si un delito es de intención o de negligencia hay que acudir a su tipificación en la parte especial del código. Términos tales como "a sabiendas", "fraudulentamente", "maliciosamente", "voluntariamente", etc. denotan delitos intencionales o dolosos. Íd.

■ Además de necesitar esta intención general, algunos delitos requieren cierta intención específica para quedar constituidos. "Así, por ejemplo, en el escalamiento se habla de intención de entrar a una estructura con el propósito de cometer X delito." D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General, op. cit.*, pág. 157. El delito de falsificación de documentos es un delito doloso que también requiere la intención específica de defraudar a otra persona.

Aunque el Art. 271 del Código Penal nuestro, *supra*, en sus aspectos básicos proviene del Código Penal argentino, se

aparta de su fuente en áreas sensitivas. *Pueblo v. Burgos Torres*, 120 D.P.R. 709 (1988). La frase "con intención de defraudar a otra [persona]"[5] del texto de la citada disposición tiene su raíz en el Código Penal de 1902, cuya fuente es el *common law* angloamericano, en específico el Código Penal de California de 1873. Véase Historial, 33 L.P.R.A. secs. 1 a 11 (derogadas). Prácticamente *todas* las jurisdicciones norteamericanas incluyen dicha intención en la tipificación del delito de falsificación (*forgery*). *Model Penal Code and Commentaries*, Filadelfia, Ed. A.L.I., 1980, Sec. 224.1. Es legítimo, por lo tanto, acudir a fuentes de dicho derecho para determinar la interpretación correcta de la intención requerida.

El proceder "fraudulentamente" significa actuar "mediante ardid, simulación, trama, treta o mediante cualquier forma de engaño". Art. 7(15) del Código Penal, 33 L.P.R.A. sec. 3022(15). "Defraudar" quiere decir privar a una persona de un bien, derecho o interés "con abuso de su confianza o con infidelidad a las obligaciones propias". *Diccionario de la Lengua Española*, 19na ed., Madrid, Ed. Espasa-Calpe, 1970, Vol. I, pág. 427.

Aunque la intención de defraudar implica un "propósito de obtener una ventaja material sobre [otra persona], o de inducirla a desprenderse de algún valor, derecho, privilegio u obligación", Conferencia Judicial de Puerto Rico, *Instrucciones al Jurado para el Tribunal Superior de Puerto Rico*, 2da ed., San Juan, Ed. C. Abo. P.R., 1977, pág. 282, el perjuicio no tiene que ser necesariamente patrimo-

---

[5] En el Código Penal argentino no se requiere intención específica de defraudar, pero se llega a un resultado similar cuando se añade el requisito de que el acto se efectúe "de modo que pueda resultar perjuicio". Véanse los Arts. 292, 293 y 294 del citado cuerpo jurídico. M. Osorio y Florit, *Código Penal de la República Argentina*, Buenos Aires, Ed. Universidad, 1980, págs. 435–441.

nial. Es suficiente que la intención sea frustrar la administración de una ley o lesionar (*impair*) una función gubernamental. R.M. Perkins y R. Boyce, *Criminal Law*, 3ra ed., Nueva York, Ed. Foundation Press, 1982, pág. 427. Así pues, utilizar una receta falsificada tiende a defraudar al Gobierno en el sentido de frustrar la administración de las leyes de drogas. *French v. United States*, 232 F.2d 736 (5to Cir. 1956). La intención de defraudar se da en toda modalidad de falsedad que pueda ocasionar daño relevante a algún interés ajeno. "No existe tal cosa como falsedad 'por negligencia'." *Pueblo v. Burgos Torres*, supra, pág. 723.

Finalmente, debemos recordar que la intención es una cuestión de hecho a ser evaluada y determinada por el Jurado o el juez en los casos de juicio por tribunal de derecho. Véase *Pueblo v. Bonilla Ortiz*, 123 D.P.R. 434 (1989). Sin embargo, la intención es un *elemento mental*, por lo que en ausencia de manifestaciones del imputado que reflejen su estado anímico, el Ministerio Público sólo puede establecerla con prueba de todas las circunstancias relacionadas con la comisión del delito y de la conducta del imputado. Art. 14 del Código Penal, *supra*.

Veamos los hechos del caso al amparo de este marco doctrinal.

## III

Los hechos que se le imputan al apelante, *sobre los cuales no hay controversia*, ocurrieron en el transcurso del ejercicio del notariado. "El notario es un profesional del Derecho que ejerce una función pública para robustecer, *con una presunción de verdad*, los actos en que interviene . . . ." (Énfasis suplido.) E. Giménez-Arnau, *Introducción al Derecho Notarial*, Madrid, Ed. Rev. Der. Privado, 1944, pág. 44. "La fe pública [del] notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o

compruebe . . . ." Art. 2 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2002. Esta característica constituye "la esencia del notariado". P. Malavet Vega, *Manual de Derecho Notarial Puertorriqueño*, Santo Domingo, Ed. Corripio, 1988, pág. 22.

■ Al imitar la firma de un otorgante en el documento que él mismo autenticó, el apelante cometió una grave falta que constituye "un menosprecio total de los valores que debe tener todo notario al ejercer esta función pública". *In re Flores Betancourt*, 117 D.P.R. 150, 152 (1986). Véanse: *In re Fournier*, 114 D.P.R. 255 (1983); *In re González González*, 119 D.P.R. 496 (1987) (suspensión temporera de notario que meramente autenticó un documento ya firmado por otra persona a requerimiento de un amigo). Aunque fue separado del ejercicio del notariado por su conducta, su responsabilidad trasciende el campo disciplinario.

Cualquier persona prudente conoce las consecuencias probables de la creación, *a sabiendas*, de un documento falso[6] capaz de transmitir derechos de propiedad. Todavía más consciente debió ser el apelante que por su profesión es un conocedor del Derecho.

■ En el caso de autos, como bien lo reconoció el propio apelante, el procedimiento correcto era la tramitación de la declaratoria de herederos ab intestato. Con este trámite, nuestro ordenamiento jurídico intenta garantizar la transmisión de los bienes relictos de las personas fallecidas a sus legítimos herederos cuando no hay testamento válidamente otorgado. Obviar dicho procedimiento para enajenar un bien de un caudal hereditario, mediante la falsificación voluntaria de la firma del difunto en un documento de traspaso, eviden-

---

[6] Es radicalmente nulo el afidávit que contiene una firma falsificada, pues en realidad se trata de ausencia total de firma. Véase Art. 34(3) de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2052.

temente propicia el fraude a los verdaderos herederos del difunto. La intención de defraudar se infiere de estos hechos y de las circunstancias personales del apelante.

Más aún, en este caso el documento de traspaso con la firma falsificada por el notario también defraudó al Estado,(7) representado por el Departamento de Transportación y Obras Públicas. Nótese que en efecto el documento en cuestión normalmente se utiliza para que un nuevo titular pueda lograr acceso a un asiento en el Registro de Vehículos de Motor en dicha dependencia gubernamental. La prueba demostró que eso fue lo que precisamente obtuvo Noemí

---

(7) En el *common law* angloamericano, desde hace un siglo se ha resuelto que para propósitos del delito de falsificación un Estado, una ciudad, un condado o simplemente "el público" pueden ser "personas" perjudicadas. Véanse, *inter alia: Luttrell v. State*, 1 S.W. 886, 888 (Tenn. 1886); *Commonwealth v. Brown*, 18 N.E. 587 (Mass. 1888); *Hanbury v. Commonwealth*, 122 S.E.2d 911 (Va. 1961); *People v. Russel*, 29 Cal. Reptr. 562 (1963).

No creemos que el principio de legalidad sea óbice a la acción penal en este caso. Si examinamos los delitos contra la fe pública tipificados en el Código Penal, Arts. 264–276 (33 L.P.R.A. secs. 4551–4596), notamos que todos los que requieren como elemento constitutivo la intención específica de defraudar incluyen en su definición la frase siguiente: "Toda [o 'cualquier'] persona que con la intención [o 'el propósito'] de defraudar a otra . . . ." Salvo por el Art. 275 (33 L.P.R.A. sec. 4595), que tipifica la falsificación de licencias, certificados y diplomas o récord análogos *expedidos por funcionarios del Estado Libre Asociado*, ninguno de los delitos estatuidos incluye expresamente al Estado como la persona contra quien va dirigida la intención de defraudar. Sin embargo, a poco que examinemos la naturaleza del delito tipificado en el Art. 275, *supra*, nos percatamos de la razón de la especificidad en la definición.

Para procesar criminalmente mediante el Art. 275 del Código Penal, *supra*, se requiere que el documento objeto de la falsificación sea expedido por una agencia, dependencia o instrumentalidad del Gobierno. Ello explica que el legislador haya consignado expresamente que el propósito de defraudar puede estar dirigido al Estado. No obstante, esto no quiere decir que en el resto de los delitos el Estado no está comprendido. Admitir tal proposición significaría que, además de falsificar documentos de traspaso para defraudar al Estado, es perfectamente lícito y permisible girar cheques sin fondos contra el Estado (Art. 264 del Código Penal, *supra*); utilizar tarjetas de crédito para obtener bienes o servicios con el propósito de defraudar al Estado (Art. 269 del Código Penal, 33 L.P.R.A. sec. 4556); usar, circular o pasar como genuinos documentos de traspaso con el fin de perjudicar al Estado (Art. 272 del Código Penal, 33 L.P.R.A. sec. 4592), y alterar o imitar asientos en un libro de registros con el fin de defraudar al Estado (Art. 273 del Código Penal, 33 L.P.R.A. sec. 4593).

Nieves en este caso. Indudablemente el Estado no hubiese expedido una licencia a nombre de Noemí Nieves en ausencia del documento falsificado.(8) Sin duda esto lo conocía el apelante Flores Betancourt, quien personalmente falsificó la firma del dueño original para inducir al Estado a aceptar el traspaso que él mismo acreditó en su función pública notarial.

Contrario a lo que plantea ante nos el apelante, de la prueba vertida en el juicio un Jurado podía concluir que él tuvo la intención de defraudar. La falsificación de una firma tiene una tendencia tan obvia a propiciar el fraude que un Jurado puede razonablemente inferir la intención de defraudar al demostrarse que él fue el autor del documento falso,(9) a menos que se provea una adecuada explicación. Perkins y Boyce, *op. cit.*, pág. 429. Véase, también, *State v. May*, 461 P.2d 126 (Idaho 1969). En vista de que el autor de la falsificación era abogado y notario, las explicaciones ofrecidas por él no justifican adecuadamente su conducta.(10)

---

(8) En *People v. Russel*, supra, se trataba de una persona que falsificó la firma de otra en una solicitud de copia de expediente académico. Se argumentó que no había intención de defraudar, ya que el acusado declaró que lo que él deseaba era escribir un artículo en el cual expondría la facilidad con que se podía obtener expedientes académicos en las universidades y que como parte de la investigación para dicho artículo cometió la falsificación. El tribunal de apelaciones expresó en la pág. 567:

"The pivotal question was whether defendant forged the documents with intent to defraud someone. If we follow the path of our own courts, the intent to defraud is well made out. In a limited sense, there is an intent to defraud the college of the transcript, for the college would not otherwise give it up to the forger. In a wider sense, the forger is violating the college rules that restrict the circulation of such transcripts. It is well settled that the fraud involved may be against the public."

(9) En el estado de California un tribunal apelativo ha dicho que: "In determining this intent [to defraud] the test is whether upon its face the false instrument will have the effect of defrauding one who acts upon it as genuine." *People v. Maldonado*, 34 Cal. Reptr. 168, 171 (1963).

(10) No nos convence su tesis de que actuó por "pena" para ayudar a una viuda indigente. Si su motivación era primordialmente ayudar a la Sra. Noemí Nieves, ¿por qué le cobró por el afidávit? De igual forma, ¿por qué no tramitó

■ Realmente nos asombra su defensa de que fue sorprendido en su buena fe cuando él mismo admite que en su oficina Noemí Nieves trató inicialmente de engañarlo presentándole a uno de los que la acompañaba como el alegado vendedor y titular registral del vehículo. Ante estas circunstancias lo normal hubiese sido sospechar de cualquier otro relato de la señora Nieves y no ayudarla a defraudar a los herederos del señor López Nieves. El Jurado consideró su justificación y no le dio crédito alguno. No intervendremos con dicha apreciación[11] en ausencia de una demostración de pasión, prejuicio o error manifiesto. *Pueblo v. Rivera Robles*, 121 D.P.R. 858 (1988).

La actuación del apelante fue ejecutada con pleno conocimiento de su ilegalidad. No hay duda que su acción (la falsificación de una firma) fue voluntaria y consciente. El resultado —el documento falso— necesariamente fue previsto como consecuencia de su actuación. Resolvemos que el Jurado actuó razonablemente al inferir la intención de defraudar del hecho irrefutable de que el licenciado Flores voluntariamente imitó la firma de un otorgante en un documento que luego invistió de la presunción de veracidad emanante de su ministerio. No erró el tribunal de instancia al negarse a conceder la absolución perentoria ni el Jurado al entender que

---

primero la declaratoria de herederos a un precio módico o hasta gratuitamente? Después de todo, los abogados deben "aceptar y llevar a cabo toda encomienda razonable de rendir servicios legales gratuitos a indigentes . . .". Canon 1 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

[11] Consideramos, además, que la defensa del apelante se apoya en la tesis errónea de que el móvil que tuvo para actuar es completamente incompatible con la intención de defraudar a alguna persona. Aun cuando su razón para imitar la firma de otro haya sido ayudar, es perfectamente factible que haya estado consciente del fraude que se intentaba perpetrar en el Registro de Vehículos de Motor del Departamento de Transportación y Obras Públicas. Ciertamente el sentimiento de pena o compasión no es causa de exclusión de responsabilidad penal. Véanse: Arts. 18–25 del Código Penal, 33 L.P.R.A. secs. 3091–3098. En el mejor de los casos sólo sería prueba de circunstancias atenuantes, relevante sólo en la imposición de la pena por el magistrado de instancia.

se estableció más allá de toda duda razonable la intención de defraudar.

Antes de concluir esta discusión debemos apuntar que la acusación le imputa al apelante la intención de defraudar a una persona específica: Margarita González Delgado. Aunque el apelante no lo señala como error, esta alegación no se estableció en su totalidad. No obstante, esto no es obstáculo para su convicción.

 En primer lugar, aunque el delito de falsificación requiere la intención específica de defraudar a una persona, no es necesario que se tenga la intención de defraudar a *una persona en particular*. 4 *Wharton's Criminal Law* Sec. 494 (1981) y casos citados allí en el esc. 9. Es suficiente que se tenga la intención de defraudar a alguien.

 En segundo lugar, aun cuando se haya alegado erróneamente el nombre de la persona que se defraudó o se intentó defraudar, entendemos que no se trata de un error perjudicial. El debido proceso de ley exige que el acusado esté adecuadamente informado de la naturaleza y extensión del delito que se le imputa. *Pueblo v. González Olivencia*, 116 D.P.R. 614, 617–618 (1985). Este requisito se cumple con una acusación o denuncia que incluya una exposición de los hechos esenciales constitutivos del delito redactada en lenguaje sencillo, claro y conciso. *Pueblo v. Calviño Cereijo*, 110 D.P.R. 691, 693 (1981).

 La Regla 38(d) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, señala las consecuencias de la incongruencia entre las alegaciones y la prueba. Si el desacuerdo es de tal naturaleza que afecta los derechos sustanciales del acusado, el foro de instancia deberá posponer el juicio, pero nunca absolver al acusado. Es únicamente cuando la incongruencia es de tal naturaleza que la prueba establece un delito distinto

no incluido que se deberá disolver el Jurado y sobreseer el proceso.

Ciertamente en el caso de autos la prueba no estableció un delito distinto. Además, la incongruencia no constituyó un error perjudicial sustancial ni obstaculizó significativamente al apelante en la preparación de su defensa. Tampoco lo expone a la posibilidad de ser enjuiciado dos (2) veces por el mismo delito. *Pueblo v. Santiago Cedeño*, 106 D.P.R. 663, 667 (1978). Por el contrario, la acusación exponía los hechos con suficiente precisión y particularidad para que no hubiera dudas sobre el acto delictivo que se le imputaba.

## IV

El apelante plantea por primera vez en su alegato que erró el tribunal de instancia al no absolver perentoriamente al acusado, ya que la prueba de cargo se fundamentó únicamente en una confesión no corroborada del apelante. Un examen de la prueba de cargo revela que su argumento es patentemente frívolo. Los testimonios de Víctor Martínez y Margarita González Delgado corroboraron el acto delictivo con suficiente prueba.

El apelante hace un señalamiento adicional sobre la pena que se le impuso. La pena de nueve (9) años corresponde al término fijo que establece la ley para el delito. No se ha demostrado abuso de discreción por parte del tribunal al imponerla. Tampoco el apelante aduce atenuantes. Nos negamos a intervenir con el sano ejercicio de la discreción del tribunal sentenciador. *Pueblo v. Narváez Narváez*, 122 D.P.R. 80 (1988). *Cf. Pueblo v. Pérez Zayas*, 116 D.P.R. 197, 201 (1985).

*Se dictará sentencia confirmatoria.*

El Juez Asociado Señor Rebollo López disiente y hace constar que, al disentir, desea dejar constancia de su profunda preocupación por la acción del Tribunal en el presente

caso de "crear" *jurisprudencialmente* un *nuevo* delito en nuestra jurisdicción, lo cual, como es del conocimiento de todos, atenta contra e infringe uno de los principios más fundamentales del derecho penal: *el principio de legalidad.* Entiende que no debería de existir la menor duda de que el legislador, al requerir como *elemento o requisito* indispensable del delito comprendido en el Art. 271 del vigente Código Penal de Puerto Rico, *supra,* la "intención de defraudar a otra", se refiere a *otra persona,* no al Estado. Le parece obvio que, para efectos del referido Código Penal, los términos "Estado" y "persona" son entidades completamente diferentes. Los Jueces Asociados Señores Negrón García y Alonso Alonso no intervinieron.