Pesante Martínez, Juez Ponente
*494 TEXTO COMPLETO DE LA SENTENCIA
La apelante Norma García López, insatisfecha con la convicción y sentencias por una infracción a los delitos de apropiación ilegal agravada y la posesión y traspaso de documentos falsificados, incoó la correspondiente apelación ante nos. En su recursó le imputó al Tribunal de Primera Instancia, Sala Superior de Guayama, el haber errado al apreciar la prueba presentada por el Fiscal e incidir al encontrarla culpable tomando en consideración pmeba insuficiente con relación a los elementos de los delitos imputados.
Con el beneficio de los autos originales, los alegatos de las partes y una exposición estipulada de la prueba, confirmamos las sentencias apeladas.
I
Contra la señora Norma García López, el Ministerio Público, luego de los trámites de rigor, presentó dos acusaciones; una por infracción al Artículo 166 del Código Penal y la otra por infracción al Artículo 272, aunque el texto imputa una violación al Artículo 271, del mismo cuerpo legal. Las mismas leen de la siguiente manera:

“Art. 166 - El Fiscal formula acusación contra la Sra. Norma García López por el delito de apropiación ilegal agravada, porque allá en o para el 1 de marzo del 2000 y en Cayey, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de Guayama, ilegal, voluntaria, maliciosa y criminalmente, actuando en concierto y común acuerdo, se apropió mediante treta y engaño, sin violencia ni intimidación, de bienes muebles los cuales se describen así: una nevera de dos puertas, un microondas, un abanico de pedestal, un mini componente, mercancía variada propiedad dichos bienes de Sam’s Club, representado por la Sra. María Escobar García, valorados dichos bienes muebles en $1,728.02 dólares, siendo el valor del bien apropiado legalmente doscientos o más ($1,728.02).

El agravante en este caso consiste en que el bien apropiado ilegalmente asciende a doscientos dólares o más ($1,728.02).

Art. 272 — El Fiscal formula acusación contra la señora Norma García López por el delito de Infracción Art. 272 del Código Penal, porque allá en o para el día 1 de marzo de 2000 y en Cayey, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Instancia, Sala Superior de Guayama, ilegal, voluntaria, maliciosa y criminalmente, actuando en concierto y común acuerdo y con la intención de defraudar a Sam’s Club, representado por la Sra. María Escobar García, falsamente alteró, imitó, suprimió o destruyó total o parcialmente un documento, instrumento escrito verdadero, consistente en que la acusada falsificó la firma del cheque #2221-02127682, por la cantidad de $6,287.00 perteneciente a la Sra. Ramonita Domínguez y/o Mario Alverio del Toro. ”

Al examinar el texto que antecede, es inescapable la conclusión que el Fiscal clasificó el delito como una *495 violación al Artículo 272 del Código Penal; no obstante, el cuerpo de la acusación lo que configura es una violación al Artículo 271.
Celebrado el juicio por Tribunal de Derecho, García López fue encontrada culpable por los delitos mencionados. A consecuencia de lo anterior, fue sentenciada a cumplir nueve (9) años por la infracción al Artículo 272 del Código Penal y 10 años por el delito de apropiación ilegal agravada; sentencias que se extinguirían de manera concurrente entre sí y con el beneficio de una sentencia suspendida. Inconforme con el dictámen en cuestión, nos pide que revoquemos las sentencias en controversia. No le asiste la razón.
Durante el juicio, el Ministerio Público aportó prueba testifical y documental. La defensa optó por no presentar testigos o documentos.
El primer testigo del fiscal lo fue el señor Mario Alverio. Este declaró ser agente retirado, casado con doña Ramonita Domínguez, con residencia en Cayey. Es pensionado de la Administración de Veteranos. Anualmente recibe una cantidad de dinero de Veteranos para los gastos médicos de él y su esposa. Este había recibido una carta de Veteranos anunciándole que para el 1 de marzo de 2000 iba a recibir un cheque de $6,287.00. Llegado dicho día, acudió a su buzón y no encontró el cheque. Se comunicó con Veteranos y allí le indicaron que esperara 10 días y si en ese tiempo no lo recibía, se comunicara nuevamente con ellos. Al no recibir el cheque, hizo la reclamación recomendada. Veteranos le informó que el cheque había sido cambiado y le remitieron una copia fotostática del mismo. Atestó que recibió copia del cheque de manos del señor Tanner del correo. Luego de numerosas gestiones logró finalmente cobrar el dinero.
Alverio declaró que presentó una querella ante la policía y que fue entrevistado por el agente de Jesús del Cuerpo de Investigaciones de Criminales de Caguas. Le manifestó al agente de Jesús que le habían hurtado el cheque de su buzón y que no había autorizado a nadie a buscar en el mismo. Que sospechaba de Noel, un vecino a quien conoce de toda la vida por una cadena de delincuencia terrible.
Incluso Noel había extinguido una sentencia de cárcel por haberle robado otro cheque anteriormente. Así también, declaró conocer que Noel, estaba cumpliendo sentencia de cárcel por haberle hurtado el cheque de $6,287.00. El testigo declaró no tener amistad con éste, por lo que le había hecho antes y que éste solía estar acompañado de la apelante Norma García López. Opinó que Noel usualmente es dirigido o influido por otras personas y que le percibe algo de retardación leve.
Alverio identificó el cheque, el cual estaba a nombre de su esposa, Ramonita Domínguez.
El segundo testigo del Ministerio Público fue el señor Tanner. Este, desde hace 23 años, es Inspector Postal, adscrito al momento de declarar, a la Oficina de San Juan. Entre sus funciones está la de realizar investigaciones criminales relacionadas con el robo de correspondencia de buzones.
El 10 de abril de 2000, Tanner recibió una llamada del agente Benjamín de Jesús del C.I.C. de Cayey en relación al hurto de un cheque del Tesoro Federal del buzón del señor Mario Alverio y Ramonita Domínguez. El cheque en controversia iba dirigido a esta última. También le informó al agente Jesús, que el cheque había sido cambiado en la Tienda Sam’s Club de Caguas. Le indicó que tenía los sospechosos de haber robado el cheque y que había citado a las partes. Le pidió el número de serie del cheque. El hizo las gestiones para obtener el cheque original del Tesoro de los Estados Unidos. Lo recibió y lo trajo consigo; le proveyó copia al agente Jesús.
El señor Tanner identificó el cheque. Indicó que estaba firmado con el nombre de Ramonita Domínguez y Marta Rivera Ramos en la parte de atrás. Que debajo de la firma de Marta Rivera Ramos había un número de tarjeta electoral. Admitió que además aparece otra firma borrada con algo que parece ser “white out” de borrar *496 tinta. El testigo declaró desconocer quién es Marta Rivera Ramos. Que no le preguntó al personal de Sam’s Club por ella, ni investigó a quién pertenece el número de tarjeta electoral ni las circunstancias de la firma borrada.
El testigo también declaró que llegó a entrevistar a la señora María Escobar, gerente de Sam’s, á los dueños del cheque y luego al señor Noel Cintrón, sospechoso. En su entrevista con la señora Escobar, ésta le indicó que atendió a la apelante Norma García en la Tienda Sam’s de Caguas. Que ella había ido a la oficina de Sam’s con tres tarjetas de identificación para que le autorizaran el cambio del cheque. Que de las tarjetas- le mostraron una tarjeta electoral y una licencia de conducir; no recordaba de qué era la tercera. Que dichas tarjetas de identificación tenían el nombre de Ramonita Domínguez. Que la tal Ramonita Domínguez no era socia y Noel Cintrón le presentó su identificación de Sam’s e indicó que era familia de ella. Como éste era socio, ella (la testigo) autorizó que se cambiara el cheque a la apelante. Tanner declaró que la señora Escobar le proveyó la lista de los artículos comprados con el cheque en Sam’s.
Tanner atestó sobre la conversación que sostuviera con Noel Cintrón. Este le admitió que había cogido el cheque del buzón del perjudicado. Que Norma, el mismo día que se llevó el cheque o al día siguiente, le visitó y le propuso ir a Sam’s. Que antes de llegar a Sam’s pararon en un Centro Comercial de Caguas donde la apelante fue para que le prepararan unas identificaciones con el nombre de Ramonita Domínguez. Una vez en Sam’s, compraron varios artículos. Se fueron de la tienda y llevaron los artículos a la casa de ella y se repartieron el sobrante del dinero.
El tercer testigo presentado por la Fiscalía fue el co autor Noel Cintrón. Vivía frente a don Mario Alverio. Estuvo en la escuela hasta tercer grado en grupos especiales. A la fecha de su testimonio se encontraba extinguiendo una sentencia de tres (3) años por haberse apropiado del cheque de don Mario Alverio. Que en otra ocasión anterior también le sentenciaron y cumplió tres (3) años por hechos parecidos cometidos contra el mismo perjudicado. Que el día que se llevó el cheque del buzón de don Mario, él estaba en la espera de recibir su cheque de alimentos.
Que retuvo el cheque en su casa como dos días. Norma le fue a visitar a su casa y él le contó que tenía un cheque. Relató que fueron a San Lorenzo a la casa de Norma en la guaguita de ella. Por la tarde fueron a Sam’s Club y compraron una nevera, un microondas, un mini componente y otros artículos. Ambos hablaron con la gerente del establecimiento para que les autorizara a cambiar el cheque. Presenció cuando Norma sacó las identificaciones falsas. Estas tenían la foto de ella. Norma endosó el cheque y la gerente la autorizó a cambiarlo. Que luego de comprar los diversos artículos, los transportaron en la guaguita de Norma y la nevera en una “pick up” de cajón. Que no recuerda quién era esa tercera persona que conducía la “pick up”. Que de Sam’s Club se dirigió a la casa de Norma, bajaron las cosas y esperaron que llegara la “pick up”. Que luego se dividieron los “chavos que sobraron”. Que sobraron, luego de cambiar el cheque y comprar los artículos como $4,000.00.
Del testimonio de Noel Cintrón surgió que antes del juicio había prestado una declaración jurada y que parte de su testimonio en corte abierta contradecía lo consignado en dicha declaración jurada. El testigo admitió que mintió cuando dijo que la apelante había aparecido en su casa el mismo día en que se apropió del cheque; que mintió en mencionar que la apelante le cogió el cheque en contra de su voluntad y que él creyó que ella quería ir a Sam’s para comprar con su propio dinero. En la declaración jurada dijo que no vio que Norma sacara tarjetas. Admitió que en ésta no mencionó la guagua “pick up”, ni al tercero que la conducía. El testigo identificó el cheque. Declaró que se entrevistó con el agente de Jesús y con Tanner.
El cuarto testigo del Ministerio Fiscal fue María Escobar, gerente de Sam’s Club de Caguas. Para el 8 de marzo, la apelante le presentó un cheque e identificaciones; coincidían con el nombre en el cheque y las fotos de la apelante. Ella no era socia de Sam’s pero su acompañante, Noel Cintrón si.
*497 Como todas las identificaciones aparentában estar en orden, autorizó el cambio del cheque que le mostró la apelante. Transcurridas varias semanas, el agente de Jesús le indicó que el cheque que ella había autorizado había sido hurtado. Como no fue ella quien cambió el cheque (ella lo autorizó, pero la cajera o la supervisora de cajeras del establecimiento fue quien físicamente lo cambió), investigó las transacciones de ese día. Presumió que fue la supervisora en caja quien cambió el cheque.
Al investigar las transacciones que se realizaron ese día, vio el video de seguridad de Sam’s. La transacción relatada aparecía en el video. Declaró que por no tener autoridad para ello, no ordenó que se asegurara el video; tampoco le solicitó a su supervisor que lo hiciera. Se enteró de la existencia de la grabación y procedió a verla luego de que el agente de Jesús le informara que el cheque había sido hurtado. No sabe qué ocurrió con el video; no se pudo producir. Sam’s cada 30 días cambia los videos y posiblemente se le grabó encima.
La testigo declaró desconocer quién es Marta Rivera Ramos, cuyo nombre aparece también al dorso del cheque. La persona a quien le autorizó cambiar el cheque es la apelante.
El testigo Benjamín de Jesús Díaz declaró que para la fecha de los hechos se desempeñaba como agente del C.I.C. de Cayey. Llevaba siete (7) años en la División de Propiedad. Investigó la querella del señor Mario Alverio relacionada al hurto de un cheque. Previo a presentar la querella, el propio perjudicado se enteró que el cheque había sido cambiado. Le indicó que sospechaba de su vecino Noel Cintrón ya que en una ocasión anterior le había hurtado otro cheque. Que a consecuencia de la información recibida, citó a Noel en su oficina y, luego de leerle las advertencias de rigor, conversaron. Que Noel en un momento dado comenzó a llorar y le indicó que había velado al cartero. Que cuando vio que el cartero puso el cheque en el buzón, él fue y abrió el buzón, que no tenía candado. Sustrajo el cheque y al día siguiente se comunicó con una persona, Joanna, que resultó ser Norma García López. Que habían ido a la Tienda Sam’s en un Hyundai verde propiedad de Norma. En Sam’s cambiaron el cheque y compraron varios artículos. De Sam’s fueron a la residencia de Norma en San Lorenzo y allí dividieron lo que sobró.
Como parte de su investigación, el agente de Jesús acudió a la Tienda Sam’s y dialogó con la gerente María Escobar. Esta corroboró la versión de Noel Cintrón en lo pertinente al cambio del cheque, las identificaciones y que éste era el socio y no la apelante. También Escobar le mencionó un video, pero él nunca lo vio.
En el contrainterrogatorio, el testigo admitió que había acusado a la apelante, a pesar de que Noel le había relatado que había actuado sólo en relación al hurto del cheque.
De Jesús atestó que la primera vez que vio el original del cheque fue el día en que comenzó el juicio. Anterior a esa fecha lo que tenía era una copia y de ésta no se desprendía que una firma aparentemente había sido borrada con “white ouf\ No empece, reconoció que el borrón era ostensible en el cheque original.
El testigo declaró que aunque vio la segunda firma en el cheque, la de Marta Rivera Ramos, no hizo gestión alguna para averiguar quién era esa persona y porqué aparecía su firma al dorso del cheque. Tampoco inquirió sobre la identidad de la persona a quien correspondía el número de la tarjeta electoral.
Desfilada la prueba en detalle relatada, el Tribunal encontró culpable a Norma García López por infracción a los artículos 166 y 272 del Código Penal de Puerto Rico. Oportunamente procedió a sentenciarla. Insatisfecha con el dictamen en cuestión recurre ante nos mediante el recurso de apelación de título. En él señala la comisión de errores por parte del Tribunal recurrido que versan sobre la suficiencia y apreciación de la pmeba.
Los errores señalados no fueron cometidos.
*498 II
El Artículo II, Sec. 11, de la Constitución del Estado Libre Asociado de Puerto Rico presume inocente a todo acusado mientras no se pruebe su culpabilidad más allá de duda razonable. Le corresponde al Ministerio Público probar la culpabilidad del acusado mediante evidencia que establezca todos los elementos del delito. Pueblo v. Irizarry _ D.P.R. _ (2002), 2002 J.T.S. 68, opinión de 10 de mayo de 2002; Pueblo v. González Román, 138 D.P.R. 691(1995); Pueblo v. Cabán Torres, 117 D.P.R. 645(1986); Pueblo v. Bigio Pastrana, 116 D.P.R. 748(1985).
En numerosas ocasiones, el Tribunal Supremo se ha pronunciado, en lo relativo al quántum de prueba en casos criminales, que la evidencia presentada por el Fiscal debe producir certeza o convicción moral en un ánimo no prevenido. La insatisfacción con la prueba es lo que se conoce como la duda razonable y fundada. Véase, Pueblo v. Feliciano Rodríguez_D.P.R._(2000), 2000 J.T.S. 47, sentencia de 29 de febrero de 2000; Pueblo v. Rivera Lugo y Almódovar, 121 D.P.R. 454(1988); Pueblo v. Torres Rivera, 129 D.P.R. 331(1991).
La duda razonable surge en nuestra mente cuando, llegado el momento de decidir la culpabilidad del acusado, nos encontramos vacilantes, indecisos, ambivalentes o insatisfechos en tomo a la determinación final. Pueblo v. Soto González, _ D.P.R. _ (1999), 99 J.T.S. 117, sentencia de 7 de julio de 1999. Lo anterior no supone que deba destruirse toda duda posible ni que la culpabilidad del acusado tenga que establecerse con certeza matemática, sino que la evidencia debe proveer aquella certeza moral que convence, dirige la inteligencia y satisface la razón. Pueblo v. Granados, 116 D.P.R.3(1984).
De otra parte, y en lo referente a la revisión de los fallos de culpabilidad, el Tribunal Supremo ha resuelto que las determinaciones hechas por el Tribunal de Primera Instancia no deben ser rechazadas de forma arbitraria, ni ser sustituidas por el criterio del foro apelativo, salvo que éstas carezcan de fundamento suficiente a la luz de la prueba presentada. Pueblo v. Maisonave, 129 D.P.R. 49(1991); Pueblo v. Acabá Raíces, 118 D.P. R. 369(1987). Esto, por razón de que los tribunales de instancia están en mejor posición para evaluar la pmeba presentada, pues'tienen la oportunidad de observar y escuchar a los testigos, y por ello su apreciación merece gran respeto y deferencia. A menos que exista pasión, prejuicio, parcialidad, error manifiesto, que la apreciación de la pmeba se distancie de la realidad fáctica o ésta sea inherentemente imposible o increíble, nosotros como tribunal apelativo debemos abstenemos de intervenir con la apreciación de la pmeba hecha por el Tribunal de Primera Instancia.
Para que una convicción sea válida es necesario que se prueben, más allá de duda razonable, todos los elementos del delito imputado y la conexión del acusado con los mismos. Pueblo v. Calderón Alvarez, 140 D.P. R. 627 (1996). El juzgador de los hechos, además, puede hacer aquellas inferencias razonables que la pmeba permita. Para ser razonable, una inferencia deberá fundarse en un hecho probado legalmente y en la deducción que de ese hecho justificaren la consideración de las ordinarias propensiones o pasiones humanas. Pueblo v. Picó Vidal, 99 D.P.R. 708(1971).
En el caso que nos ocupa, la apelante García López fue acusada y resultó convicta por el delito de apropiación ilegal agravada, el cual está tipificado en el Artículo 166 del Código Penal de Puerto Rico. El delito de apropiación ilegal se encuentra definido en el Artículo 165 del mismo cuerpo legal y dispone que para que se configure el delito es necesario establecer que la persona se apropió, ilegalmente, sin violencia ni intimidación, de bienes pertenecientes a otra persona. Apropiar incluye el malversar, defraudar, ejercer control ilegal, usar, sustraer, apoderarse, o en cualquier forma hacer propio cualquier bien o cosa en forma temporal o permanente.
El delito de apropiación ilegal se considera agravado si, entre otras circunstancias, el valor de los bienes es de doscientos (200) dólares o más. En casos, como el presente, en donde el delito está dividido en grados y la penalidad para cada grado varía de acuerdo con el valor del objeto hurtado, el Fiscal debe presentar pmeba sobre dicho valor. Si se imputa el delito por bienes cuyo valor fuere inferior a los doscientos (200) dólares, no *499 es necesaria prueba específica sobre dicho valor, siempre que los bienes tengan un valor intrínseco. Sin embargo, cuando se imputa la apropiación ilegal de bienes cuyo valor sea igual o exceda los doscientos dólares o más, lo determinante es el valor en el mercado, no el costo original, en la época y lugar en que se cometió el delito. Pueblo v. Rivera, 75 D.P.R. 298 (1953). No se requiere el testimonio de un perito, siendo suficiente el testimonio no rebatido de un testigo. Pueblo v. Laureano Figueroa, 97 D.P.R. 354 (1968); Pueblo v. Gagot Mangual, 96 D.P.R. 625 (1968); Pueblo v. Bonilla Figueroa,, 83 D.P.R. 295 (1961). El Ministerio Público tiene que presentar prueba que establezca más allá de duda razonable la naturaleza de los bienes y el valor de los mismos al momento de la apropiación. Pueblo v. Rodríguez, 102 D.P.R. 158 (1974).
El Fiscal le imputó a la apelante el haberse apropiado de “una nevera de dos puertas, un microondas, un abanico de pedestal, un minicomponente y mercancía variada, propiedad dichos bienes de Sam’s Club, representado por la Sra. María Escobar García; valorados dichos bienes en $1,728.02 dólares”.
Durante el juicio se presentó prueba mediante la cual se establecieron todos los elementos del delito de apropiación ilegal agravada. El co-autor Noel Cintrón atestó que luego de sustraer del buzón de Don Mario Alverio Toro un cheque por la cantidad de $6,287.00 fue con la apelante a Sam’s Club de Caguas. Una vez allí, y con varias identificaciones falsas que había gestionado la apelante, ésta, previa la autorización de la Sra. Escobar de Sam’s Club, falsificó la firma de la señora Ramonita Domínguez, esposa de Don Mario y endosó el cheque. Pagaron la mercancía con el cheque en cuestión y le sobraron más de $4,000, dinero que posteriormente se repartieron en la casa de la apelante. Necesitaron para transportar los enseres y artículos adquiridos un vehículo tipo “pick up”. Con este testigo se estableció el valor de los objetos, apropiados ilegalmente. La diferencia entre los $6,287.00 y los más de $4,000 que les sobraron, constituye el valor de la mercancía apropiada ilegalmente en Sam’s. Examinada la prueba en su totalidad, no albergamos dudas de que la prueba presentada sustentó las alegaciones contenidas en la acusación. El valor de lo “comprado” en Sam’s” excede, por mucho, los doscientos dólares.
El testimonio o confesión de un co-autor será examinado con desconfianza y se le dará el peso que estime el juez o jurado luego de examinarlo con cautela a la luz de toda la evidencia presentada en el caso. 34 L.P.R.A. Ap. II, R.156. Si este [el testimonio o confesión] se esgrime contra el acusado, no se requerirá prueba de corroboración. El mismo será suficiente para sostener una convicción si es creído más allá de duda razonable. Pueblo v. Torres Rivera, 129 D.P.R. 331 (1991); Pueblo v. Echevarría Rodríguez, 128 D.P.R. 752 (1991).
En el caso que nos ocupa, el Tribunal le otorgó credibilidad al testimonio y la declaración jurada de Noel Cintrón. Aunque éste tuvo sus lagunas, inconsistencias y contradicciones, las mismas no fueron de tal grado que mereciera ser descartado. Aun bajo el escrutinio de haber sido examinado con desconfianza y cautela, el mismo fue creído.
No detectamos razón por la cual debamos intervenir con la apreciación y la credibilidad que le mereciera dicho testimonio al Tribunal revisado.
De otro modo, la apelante le imputa al Tribunal sentenciador el haber errado al encontrarla culpable por el delito de posesión y traspaso de documentos falsificados (Art. 272) cuando la acusación imputaba la comisión del delito de falsificación de documentos (Art. 271). Más aún, que la prueba de cargo fue inconsistente con las alegaciones de la acusación y que en ningún momento el Fiscal solicitó que se enmendara la misma.
El Artículo 271 del Código Penal lee de la siguiente manera:

“Toda persona que con intención de defraudar a otra hiciere, en todo o en parte, un documento, instrumento o escrito falso, mediante el cual se creare, transfiriere, terminare o de otra forma afectare cualquier derecho, obligación o interés, o que falsamente alterare, limitare, suprimiere o destruyere, total o 
*500
parcialmente, uno verdadero, será sancionada con pena... ”.

Constituye el elemento esencial del delito tipificado en el Artículo 271 la intención de defraudar y contempla dos modalidades, a saber: (1) hacer en todo o parcialmente un documento, instrumento o escrito falso, y (2) alterar, imitar, suprimir o destruir total o parcialmente uno verdadero. El documento falso puede crear, transferir, terminar o afectar cualquier derecho, obligación o interés. Pueblo v. Uriel Alvarez, 112 D.P.R. 312 (1982).
Mientras el Artículo 271 contempla la falsificación del documento, el Artículo 272 atiende la posesión y traspaso de documentos falsificados. Este dispone:

‘Art. 272

Toda persona que con intención de defraudar a otra posea, use, circule, venda, pase o trate de pasar como genuino o verdadero cualquier documento, instrumento o escrito de los especificados en la sección anterior (Artículo 271) a sabiendas de que los mismos son falsos, alterados, falsificados o imitados, será sancionada con pena...”.

La acusación que el fiscal presentara contra la apelante, aunque no es un modelo a seguir, cumple con el debido procedimiento de ley. Los errores en ella contenidos son de forma, más no de sustancia. La acusación en su texto imputa el delito de falsificación de documentos tipificado en el Artículo 271. Lo importante es que cuando se describe la conducta delictiva en que alegadamente incurrió la apelante, esta está contemplada en el Artículo 271. El Ministerio Público le imputó a García López que ‘ falsamente alteró, imitó, suprimió o destruyó total o parcialmente un documento escrito verdadero, consistente en que la acusada falsificó la firma del cheque #221-03127682 por la cantidad de $6,287.00 perteneciente a la Sra. Ramonita Domínguez, y/o Mario Alverio Toro”. Surge con claridad, aunque se mencionara en la acusación que se imputaba la comisión del Artículo 272, que a la apelante se le acusó de la modalidad del Artículo 271 consistente en firmar, con un nombre que no era el de ella, el cheque dirigido a Mario Alverio y Ramonita Domínguez. El fiscal presentó prueba tanto de falsificación de documentos como de la posesión y traspaso de documentos falsificados. Surge de la exposición narrativa de la prueba que luego de obtener identificaciones falsas a nombre de Ramonita Domínguez, la apelante, con la colaboración de Noel Cintrón, obtuvo la autorización para el cambio del cheque, lo endosó y junto a este último compraron la mercancía en Sam’s y se dividieron luego el sobrante. Quedó así configurado el delito imputado, y en particular, la intención de defraudar, la cual, por ser un elemento subjetivo, puede inferirse de las circunstancias relacionadas con la comisión de los hechos. Pueblo v. Fernández Simono, 140 D.P.R. 514 (1996); Pueblo v. Flores Betancourt, 124 D.P.R. 867 (1989).
La acusación presentada por el Ministerio Público, aun con el defecto señalado, cumplió con el requerimiento constitucional de que el acusado se encuentre debidamente notificado de la naturaleza y causa de la acusación en su contra, a fin de que pueda preparar su defensa. La misma incluyó una exposición de los hechos esenciales constitutivos del delito y fueron relatados en un lenguaje sencillo, claro y conciso, de manera que pudo ser entendido por una persona de inteligencia común. Artículo II, secciones 7 y 11 de la Constitución del E.L.A.; Regla 35 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 35; Pueblo v. González Olivencia, 116 D.P.R. 614 (1985); Pueblo v. Flores Betancourt, supra; Pueblo en interés del menor F.S.C., 130 D.P.R. 100(1992); Pueblo v. Saliva Valentín, 130 D.P.R. 767 (1992).
El Tribunal de Primera Instancia, acogiendo el título con el cual caracterizó el fiscal la conducta delictiva de la apelante, la declaró culpable por violación al Artículo 272. No obstante, el delito propiamente imputado en el texto de la acusación y la prueba desfilada estableció la comisión del delito de falsificación de documentos contemplado en el Artículo 271. No estamos ante una situación donde se pretenda enmendar las alegaciones por la prueba, sino que se cometió un error de forma, que en este caso es inconsecuente puesto que la pena *501 contemplada para el artículo 272 es la misma que para el artículo 271. Siendo ello así, ordenamos se enmiende la sentencia a los únicos fines de conformar la sentencia con el delito imputado en el texto de la acusación, es decir, por el Artículo 271 del Código Penal.
Como hemos consignado en casos anteriores;
“Un juicio justo, naturalmente, no significa un juicio perfecto. Los procedimientos judiciales, no hay duda, son dirigidos por, y dependen de, los seres humanos. No podemos exigir, en consecuencia, que los procesos criminales que sé celebran en nuestra jurisdicción se lleven a cabo libre de errores. Es deber de todos, sin embargo, aspirar y velar porque dichos procesos sean justos e imparciales. De hecho, ello constituye un mandato constitucional. Pueblo v. Santiago Lugo, 134 D.P.R. 623 (1993). ”
Si bien es cierto que la apelante Norma García López no tuvo un juicio perfecto, no albergamos dudas que éste fue justo.
Por los fundamentos que anteceden, confirmamos las sentencias apeladas.
Lo acordó el Tribunal y lo certifica la Secretaria. General.
Leda. Aida I. Oquendo Graulau
Secretaria General