La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
Nos corresponde analizar si el delito de maltrato conte-nido en la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989 (Ley 54), es un delito menor incluido en el de maltrato mediante amenaza que tipifica esa ley. Asimismo, debemos determinar si se justifica dejar en libertad a una persona acusada por maltratar a su pareja debido a que se le sen-tenció por un delito distinto al imputado, aunque se probó que había cometido aquel por el cual se le acusó.
*201 I
La Sra. Moraima Vázquez Cotto y el Sr. Abraham Ayala García vivieron juntos durante seis años y son madre y padre de dos niñas. A mayo de 2008, llevaban un año y dos meses separados.
El 12 de mayo de 2008, la señora Vázquez Cotto se en-contraba en el balcón de su casa junto a sus dos hijas y su pareja actual cuando el señor Ayala García llegó en la gua-gua de su madre y se estacionó frente a la residencia. El señor Ayala García les gritó: “Aquí no va a haber break pa’ nadie. Rompieron el cristal de la guagua de mi mai y yo sé que fueron ustedes”. Luego, señaló a Vázquez Cotto y le dijo “a ti te voy a joder donde quiera que te coja”, la insultó y se marchó en la guagua. La señora Vázquez Cotto llamó a la Policía para notificar lo sucedido. Indicó que temía por su vida, pues había experimentado episodios violentos de su expareja anteriormente.(1)
El mismo día se presentaron dos denuncias contra el señor Ayala García. En una se imputaba violación al Artí-culo 3.2 de la Ley 54, que castiga el maltrato a la pareja en modalidad agravada cuando éste se comete en presencia de menores de edad, en violación de una orden de protección o tras penetrar en la morada de la víctima, entre otras circunstancias. La otra denuncia fue por violación al Artí-culo 3.3 de la misma ley, que castiga el maltrato mediante amenaza.(2) No obstante, en la vista preliminar sólo se en-contró causa para acusar por el Artículo 3.3. La acusación lee:
El referido imputado, Abraham Ayala García, allá en o para el día 29 de abril de 2008, en Río Grande, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, *202 Sala Superior de Fajardo, ilegal, voluntaria, maliciosa y crimi-nalmente, violó el Art. 3.3 de la Ley 54, consistente [sic] en que el aquí imputado amenazó a la Sra. Moraima Vázquez Cotto, persona con quien convivió y han procreado dos hijos. Consis-tente [sic] en que le manifestó “te voy a joder, eres una puta, cabrona, donde te coja te voy a joder”. Sintiendo ésta temor por su vida. Alegando la víctima que tiene miedo porque siem-pre anda sola con sus hijos.(3)
En el juicio, celebrado el 8 de septiembre de 2008, la señora Vázquez Cotto fue la testigo de cargo. Según la ex-posición narrativa de la prueba estipulada, Vázquez Cotto testificó sobre lo sucedido el 12 de mayo de 2008.(4) Además de la descripción de ese incidente, narró que el 29 de abril de 2008, en la mañana, ella se despertó porque estaban tocando fuertemente en la ventana de la cocina y luego en la puerta de la casa. Entonces, vio al señor Ayala García, quien aparentemente había brincado la verja de la residen-cia, y estaba gritándole que saliera, que “qué carajos ella se creía” y le reclamaba, con actitud agresiva, que él tenía derecho a ver sus hijas.(5) Ella le contestó que no podría ver a las niñas hasta que solicitara los documentos judiciales que establecían las relaciones paterno-filiales. Según Váz-quez Cotto, el señor Ayala García se marchó enojado. Ella llamó a la Policía y luego solicitó una orden de protección, la cual fue expedida.
Asimismo, Vázquez Cotto indicó en el juicio que ante-riormente se habían dado sucesos de violencia doméstica, que la habían llevado a solicitar órdenes de protección en tres ocasiones. A preguntas de la defensa, también señaló que, a pesar de que el acusado vivía cerca de su casa y de que la Policía se tardó tres semanas en arrestarlo después
*203 de la vista de causa para arresto o Regla 6, Ayala García no volvió a buscarla. No obstante, dijo que sentía miedo de-bido a los incidentes previos.(6)
La jueza de instancia halló al señor Ayala García culpable por violar el Artículo 3.1 de la Ley 54, que sanciona el empleo de fuerza física, violencia psicológica, intimidación o persecución contra la pareja o expareja.(7) El 9 de diciem-bre de 2008, le impuso una sentencia de 3 años de prisión, que es el término máximo de cárcel dispuesto para viola-ciones tanto a dicho Artículo 3.1 como al Artículo 3.3 de la Ley 54.(8)
El señor Ayala García apeló la sentencia. Indicó que el Tribunal de Primera Instancia erró al encontrarlo culpable por un delito distinto a aquel por el cual se le acusó sin ser ese un delito menor incluido en el imputado y al imponerle la pena máxima establecida para dicho delito sin justificación. (9) El Ministerio Público replicó que el delito de maltrato del Artículo 3.1 está subsumido en el de mal-
*204 trato mediante amenaza del Artículo 3.3 porque el primero requiere intimidación, y justificó la pena impuesta por el foro de instancia dentro de la discreción que tiene para ello, pues el acusado dio resultado positivo a marihuana y heroína en las pruebas de sustancias controladas, llevó a cabo la conducta delictiva frente a sus hijas y ya había incurrido en situaciones de violencia contra su expareja(10)
El Tribunal de Apelaciones concluyó que el delito de maltrato del Artículo 3.1 no es uno menor incluido en el de maltrato mediante amenaza del Artículo 3.3, por lo que no se podía hallar culpable al acusado del primer delito cuando el que se le imputó fue el segundo. Ordenó la ex-carcelación del señor Ayala García, basándose en la Regla 38(d) de Procedimiento Criminal, 34 L.PR.A. Ap. II. Ésta dicta que, cuando la prueba presentada no establece los elementos del delito imputado y sí los de un delito distinto no incluido en aquel por el cual se acusó, procede el sobre-seimiento del proceso penal.(11)
El Ministerio Público solicitó al foro apelativo que re-considerara su decisión para que no quedase impune la conducta antijurídica por la cual el señor Ayala García fue acusado y que, según alegó, se probó más allá de duda razonable. Enfatizó en que la absolución no se debió a que la prueba de cargo resultara insuficiente o inverosímil para probar el delito imputado, sino a un error de derecho del foro de instancia, y solicitó que se modificara la senten-cia apelada y se ordenara al foro de instancia emitir un dictamen de culpabilidad por el delito de maltrato me-diante amenaza por el cual el señor Ayala García fue acusado.(12) Luego de que el Tribunal de Apelaciones dene- *205 gara lo solicitado, el Ministerio Público recurrió a este Tribunal con los mismos argumentos que presentó en la re-consideración ante el foro apelativo.(13)
El 15 de marzo de 2010, expedimos el recurso. El Minis-terio Público presentó su alegato y retomó su argumento de que se debía reinstalar la sentencia del Tribunal de Pri-mera Instancia porque el delito de maltrato del Artículo 3.1 es uno menor incluido en el de maltrato mediante ame-naza del Artículo 3.3. En la alternativa, solicitó que se mo-dificara el fallo y se dictara sentencia por el delito imputado. Mientras, el señor Ayala García indicó en su ale-gato que el delito de maltrato no está subsumido en el de maltrato mediante amenaza porque el primero no siempre implica intimidación y requiere un patrón recurrente para que se cometa según dicha modalidad, así como porque ambos delitos conllevan la misma pena. Señaló, además, que ni el pliego acusatorio ni la prueba presentada demos-traron más allá de duda razonable que hubiesen ocurrido episodios de maltrato adicionales al de la amenaza que se le imputó.
Con el beneficio de ambas comparecencias, pasamos a resolver.
II
Toda persona acusada, por mandato constitucional, tiene derecho a conocer la naturaleza y la causa de la acusación.(14) Ésta, según la Regla 35 de Procedimiento Criminal, tiene que contener “[u]na exposición de los hechos esenciales constitutivos del delito, redactada en lenguaje sencillo, claro y conciso, y de tal modo que pueda
*206 entenderla cualquier persona de inteligencia común”.(15) Además, debe incluir la cita de la ley que se alegue que se infringió. No obstante, omitirla o incluir una cita errónea se considera sólo un defecto de forma. (16) Como explica el Prof. Ernesto L. Chiesa, si los hechos imputados son cons-titutivos de algún delito al amparo de las leyes penales de Puerto Rico, la acusación será suficiente, a menos que de esos hechos no se pueda identificar qué delito se cometió o se demuestre que ese error de forma perjudica los derechos sustanciales del imputado. (17) Lo importante es que el pliego acusatorio provea la información necesaria para que el acusado pueda preparar su defensa adecuadamente.(18)
El acusado, si el Ministerio Público prueba más allá de duda razonable que cometió los hechos alegados, puede ser declarado culpable por el delito imputado, así como por “cualquier delito inferior necesariamente comprendido en el delito que se le imputa; o de cualquier grado inferior del delito que se le imputa; o de tentativa de cometer el delito que se le imputa”.(19) La decisión de declarar culpable al acusado por el delito imputado o por un delito menor in-cluido en el primero depende de la evidencia presentada en el juicio, de que se puedan identificar en la prueba los ele-mentos necesarios para concluir que se cometió la infrac-ción y el vínculo del acusado con ese hecho.(20)
Para que se pueda hallar culpable a una persona por un delito menor incluido en el delito por el cual se le *207 acusó, es necesario que los hechos expuestos en la acusa-ción por el delito mayor contengan los elementos esenciales del delito menor. Si el delito mayor incluye todos los ele-mentos requeridos por la Ley en relación con el menor, el mayor incluye al menor. Por el contrario, el menor no está comprendido en el mayor si el menor requiere algún otro elemento indispensable que no es parte del delito mayor.(21) Para hacer la determinación, se analiza si no se puede co-meter el delito imputado sin cometer también el menor incluido.(22)
III
La Ley para la Prevención e Intervención con la Violen-cia Doméstica, o Ley 54, se aprobó en 1989 para atender la situación del maltrato de pareja que sufrían miles de per-sonas en Puerto Rico, en su mayoría mujeres, y que no encontraba remedio en los recursos legales existentes. Su propósito fue prevenir la violencia y proteger la vida y la seguridad de estas personas, y por eso se diseñó a partir de las experiencias de las agraviadas.(23) Para cumplir con dicho objetivo, la Ley 54 recogió de manera integrada diver-sas medidas. Estas agilizan los procesos para obtener ór-denes de protección contra los agresores, tipifican cinco delitos de maltrato contra la pareja; permiten el arresto inmediato, sin necesidad de orden, de la pareja maltra-tante; obligan a la Policía a brindar ayuda a las víctimas y preparar informes sobre los incidentes de violencia domés-tica; proveen alternativas de rehabilitación para los ofen-
*208 sores y ordenan educar a la ciudadanía para prevenir esta conducta.(24)
Una de las innovaciones más importantes de la Ley 54 fue criminalizar de manera específica el abuso psicológico en las relaciones íntimas, pues éste suele pasar desapercibido tanto porque no deja marcas visibles como porque muchas veces queda subsumido en otros tipos de violencia.(25) Los estudios sobre violencia doméstica demuestran que la violencia emocional o psicológica es la más insidiosa de las agresiones contra la pareja, en parte porque muchas veces ni siquiera se reconoce como violencia, a pesar de que su efecto es devastador y persistente.(26) Asimismo, las investigaciones indican que los insultos y las intimidaciones suelen sentar las bases para que las mujeres se sientan subordinadas e indefensas y soporten luego ataques físicos y sexuales.(27)
Por eso, cuando se presentó el proyecto legislativo que culminó en la aprobación de la Ley 54, se expresó que la creación de los delitos de maltrato mediante amenaza y maltrato mediante restricción de la libertad de la pareja se justificaba principalmente porque “[l]a mayoría de los ac- *209 tos de violencia doméstica que degeneran en grave daño físico en la persona del cónyuge, muchas veces causándole la muerte, comienzan con una amenaza o se dan cuando la persona está bajo el dominio de otra”.(28) Pero, más allá de ser indicadores de riesgo de violencia física y daño letal contra las víctimas, el acoso y las amenazas constituyen un elemento de persecución y desestabilización que requiere ser sancionado, aun cuando no se concrete el atentado anunciado. (29)
El elemento de abuso psicológico está presente en los cinco delitos que tipifica la Ley 54. El Artículo 3.1, que prescribe el maltrato contra la pareja de modo general, incluye la violencia psicológica, la intimidación y la persecución. Lo mismo ocurre con el Artículo 3.2, que castiga las conductas incluidas en el Artículo 3.1 cuando suceden en determinadas circunstancias agravantes. De hecho, una de las razones para crear los delitos de maltrato y maltrato agravado en los Artículos 3.1 y 3.2 de la Ley 54, a pesar de que ya existían el de agresión y el de agresión agravada en el Código Penal, fue que estos últimos se referían sólo a lesiones a la integridad corporal, mientras que los propuestos en la legislación especial incluían el daño causado por violencia psicológica. (30) Por su parte, el Artículo 3.3 sanciona el maltrato cuando se realiza mediante amenazas y el Artículo 3.4 cuando se lleva a cabo restringiendo la libertad de la otra persona, ambas manifestaciones de abuso emocional. Asimismo, el Artículo 3.5, que condena la agresión sexual conyugal, contiene en su enumeración de instancias de relaciones sexuales no consentidas las situaciones en que se emplean violencia psico- *210 lógica, intimidación o amenazas(31) Esto se debe a que los distintos tipos de abuso —el físico, el sexual y el psicológi-co— se encuentran intricados en los casos de violencia doméstica. De ahí la dificultad de clasificar los hechos de violencia de pareja según categorías penales definidas. Sin embargo, como explica la Prof. Esther Vicente, al construir los delitos que sancionaría la Ley 54, por imperativo del principio de legalidad(32) la conducta lesiva contra la pa-reja se tuvo que subdividir en varios delitos que establecie-ran de forma clara y específica qué se estaba prohibien-do(33)
En este caso nos corresponde analizar el contenido y alcance de los Artículos 3.1 y 3.3 de la Ley 54. El Artículo 3.1 de la Ley 54 dispone:
Toda persona que empleare fuerza física o violencia psicoló-gica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con quien cohabita o haya cohabitado, o la persona con quien sostuviere o haya sostenido una rela-ción consensual, o la persona con quien haya procreado un hijo o hija, para causarle daño físico a su persona, a los bienes apreciados por ésta, excepto aquéllos que pertenecen privati-vamente al ofensor, o a la persona de otro, o para causarle grave daño emocional, incurrirá en delito grave de cuarto grado en su mitad superior. El tribunal podrá imponer la pena de restitución, además de la pena de reclusión establecida(34)
Mientras, el Artículo 3.3 de la Ley 54 establece:
Toda persona que amenazare a su cónyuge, ex cónyuge, a la persona con quien cohabita o con quien haya cohabitado, o con quien sostiene o haya sostenido una relación consensual, o la *211 persona con quien haya procreado un hijo o hija, con causarle daño determinado a su persona, a los bienes apreciados por ésta, excepto aquéllos que pertenecen privativamente al ofen-sor, o ala persona de otro, incurrirá en delito grave de cuarto grado en su mitad superior.
El tribunal podrá imponer la pena de restitución, además de la pena de reclusión establecida.(35)
Estos dos delitos comparten el mismo sujeto activo, toda persona, y el mismo sujeto pasivo: su cónyuge, excónyuge, persona con quien cohabita o cohabitó, persona con quien sostiene o sostuvo una relación consensual o persona con quien haya procreado hijos o hijas. También, el maltrato y el maltrato mediante amenaza son ambos delitos graves de cuarto grado y la ley ordena imponer la pena correspon-diente en su mitad superior en los dos casos.
¿Por qué estos dos delitos conllevan la misma pena? Como mencionamos anteriormente, el daño permanente y difícil de subsanar que produce el abuso psicológico, así como las implicaciones que tiene dentro de la relación de pareja como factor para la perpetuación del ciclo de mal-trato, instan a equiparar el abuso físico con la amenaza de llevarlo a cabo. Además, ambas conductas representan abuso emocional. Así lo reconoció nuestra Legislatura cuando afirmó, en el Memorial Explicativo del proyecto que se convirtió en la Ley 54, que “[t]odos los delitos pro-puestos se han clasificado como graves, pues es importante que comuniquemos a los ofensores que su conducta es in-aceptable y que no será tolerada” y que el maltrato psico-lógico, incluido en el Artículo 3.1, recoge el abuso emocio-nal que “acompaña todo maltrato físico, pero en ocasiones se presenta solo y deja cicatrices tan severas como el físico”. (36) Asimismo, cuando la Cámara de Representantes evaluó el proyecto de ley aprobado por el Senado, reco- *212 mendó enmendarlo para que los Artículos 3.1 y 3.3 fueran clasificados como menos graves y se pudieran referir a me-diación antes de que se diera la vista de causa probable, pero las enmiendas fueron retiradas porque se reconoció que iban en contra del propósito de la medida de eliminar los patrones de conducta agresiva y de dejar claro que nin-gún tipo de violencia contra la pareja sería condonado.(37)
Esta valorización se ha mantenido. Tanto el Artículo 3.1 como el 3.3 fueron enmendados en el 2004 para aumentar la pena de cárcel aplicable desde 1989 de 12 meses, que se podían reducir a 9 meses si mediaban circunstancias ate-nuantes y aumentar a 18 meses en caso de agravantes, a la correspondiente a delitos graves de cuarto grado. (38) Los delitos graves de cuarto grado conllevan una pena de re-clusión por término fijo no menor de 6 meses y 1 día ni mayor de 3 años, contados en años naturales.(39) En el 2005, los Artículos 3.1 y 3.3 de la Ley 54 se enmendaron nuevamente para establecer que quienes realizaran la con-ducta tipificada incurrirían en delito grave de cuarto grado en su mitad superior; es decir, se les impondría una pena de entre 18 meses y un día como mínimo y 3 años como máximo. (40) Esto refleja que, cuando la Legislatura ha re-visado estos delitos, ha decidido aumentar las penas apli-cables, pero conservándolas iguales para ambas conductas.
La diferencia entre el Artículo 3.1 y el 3.3 de la Ley 54 se encuentra en la conducta delictiva que tipifican. De entrada, debemos notar que ambos delitos proscriben el abuso psicológico. No obstante, el Artículo 3.3 es más espe- *213 cífico, pues se limita a castigar el maltrato psíquico que se realiza a través de amenazas, mientras que el 3.1 es más abarcador, pues prohíbe el abuso psicológico en general y, además, el abuso físico.
El delito de maltrato del Artículo 3.1 tiene tres elementos: (1) que se emplee fuerza física, violencia psicológica, persecución o intimidación; (2) que esa conducta se lleve a cabo contra una de las parejas o ex parejas identificadas en la ley, y (3) que se haga con el propósito de causar algún daño físico a la persona, a sus bienes o a otra persona o para causarle grave daño emocional a la pareja o ex pareja.(41)
En cuanto al primer elemento, la violencia física no está definida en la ley, pero este Tribunal ha interpretado que se da con cualquier agresión, independientemente de si existe un patrón de maltrato.(42) El Artículo 3.1 tampoco exige que la fuerza física utilizada sea severa; cualquier grado de fuerza es suficiente para que se configure el delito si se emplea con la intención de causar algún daño.(43)
La Ley 54 sí delimita las demás conductas prohibidas por el Artículo 3.1. La violencia psicológica se define como “un patrón de conducta constante ejercitada en deshonra, descrédito o menosprecio al valor personal, limitación irrazonable al acceso y manejo de los bienes comunes, chantaje, vigilancia constante, aislamiento, privación *214 de acceso a alimentación o descanso adecuado, amenazas de privar de la custodia de los hijos o hijas, o destrucción de objetos apreciados por la persona, excepto aquellos que pertenecen privativamente al ofensor”(44) Esta ocurre, por ejemplo, cuando se verbalizan insultos, burlas o críticas de manera repetida(45) La intimidación se da a través de “toda acción o palabra que manifestada en forma recu-rrente tenga el efecto de ejercer una presión moral sobre el ánimo de una persona, la que por temor a sufrir un daño físico o emocional en su persona, sus bienes o en la persona de otro, es obligada a llevar a cabo un acto contrario a su voluntad”(46) La persecución, según la Ley 54, significa “mantener a una persona bajo vigilancia constante o fre-cuente con su presencia en los lugares inmediatos o relati-vamente cercanos al hogar, residencia, escuela, trabajo o vehículo en el cual se encuentre la persona, para infundir temor o miedo en el ánimo de una persona prudente y razonable”(47) Asimismo, la Ley 54 define el grave daño emocional que forma parte del tercer elemento del Artículo 3.1 como “cuando, como resultado de la violencia domés-tica, haya evidencia de que la persona manifiesta en forma recurrente una o varias de las características siguientes: miedo paralizador, sentimientos de desamparo o desespe-ranza, sentimientos de frustración y fracaso, sentimientos de inseguridad, desvalidez, autoestima debilitada u otra conducta similar, cuando sea producto de actos u omisiones reiteradas”.(48)
En todas estas definiciones aplicables a la violencia psi-cológica y el daño emocional que sanciona el Artículo 3.1 encontramos el elemento de recurrencia. Por el contrario, el delito de maltrato mediante amenaza del Artículo 3.3 no *215 requiere un patrón de conducta ni un efecto sobre el ánimo de la víctima. (49) En vista de ello y debido a que es difícil probar que ha habido un patrón constante de abuso psico-lógico o que se ha causado grave daño emocional, los inci-dentes de maltrato en que están presentes las amenazas y la intimidación se tramitan al amparo del Artículo 3.3 y no del Artículo 3.1.(50)
Los Artículos 3.1 y 3.3 de la Ley 54 tipifican delitos distintos con la misma pena. Aunque tienen en común la persona que comete el delito y la víctima, así como el empleo de maltrato psicológico, el Artículo 3.3 sólo exige que se haga una amenaza de causar un daño determinado. El Artículo 3.1, además de ser más amplio en cuanto a los tipos de conducta que sanciona, requiere elementos que no están presentes en el delito de maltrato mediante amenaza: la recurrencia del abuso psicológico y el grave daño emocional que se le causa a la víctima. Entonces, el delito de maltrato del Artículo 3.1 no puede ser considerado un delito menor incluido en el de maltrato mediante amenaza del Artículo 3.3. Para esto, sería necesario que el Artículo 3.3 incluyera todos los elementos del Artículo 3.1 y no lo hace. Está claro que el delito que el Estado alega que es uno menor incluido requiere elementos que no forman parte del supuesto delito mayor. Asimismo, una persona puede cometer el delito de maltrato mediante amenaza contra su pareja sin incurrir en el delito de maltrato general de la Ley 54. Esto es, que no necesariamente se va a cometer el delito que se alega que es uno menor incluido cuando se comete el delito por el cual se acusó al señor Ayala García.
En este caso, la prueba presentada podría servir para probar un caso de maltrato al amparo del Artículo 3.1 de la *216 Ley 54. Sin embargo, al acusado se le imputó haber violado el Artículo 3.3 de la ley y, en el ámbito criminal, la prueba no enmienda las alegaciones tácitamente.(51) La acusación, aunque aludió al temor que la víctima sentía ante las ac-ciones de su ex pareja, no incluyó la alegación de maltrato psicológico recurrente, pues sólo mencionó un incidente. Además, originalmente, al señor Ayala García se le imputó haber incurrido en la conducta prohibida por el Artículo 3.1 en su modalidad agravada, según dispuesto por el Ar-tículo 3.2, pero no se encontró causa para acusar por dicho delito, sino sólo por el Artículo 3.3.
Por todo ello, erró el Tribunal de Primera Instancia al emitir un fallo de culpabilidad contra el señor Ayala García por violación al Artículo 3.1 de la Ley 54. El Tribunal de Apelaciones concluyó correctamente que no se justificaba la condena por ese delito, que es uno distinto al imputado y no es uno menor incluido en éste. Sin embargo, el foro ape-lativo no terminó su análisis en este punto y tampoco puede hacerlo este Tribunal.
IV
El Tribunal de Apelaciones razonó que, como consecuencia de que se dictó sentencia por un delito distinto al imputado que no era uno menor incluido en éste, procedía la excarcelación del acusado. Para ello, se basó equivocadamente en la Regla 38(d) de Procedimiento Criminal. Esta establece:
El tribunal podrá permitir enmiendas a la acusación, a la denuncia o a un escrito de especificaciones en cualquier mo-mento antes de la convicción o absolución del acusado, en caso de que hubiere incongruencia entre las alegaciones y la prueba. La incongruencia o desacuerdo entre las alegaciones y la prueba no será fundamento para la absolución del acusado; pero el tribunal, siempre que el acusado no se opusiere, deberá *217 posponer el juicio si es de opinión que los derechos sustancia-les del acusado se han perjudicado, para celebrarlo ante otro jurado o ante el mismo tribunal si el juicio no fuere por jurado, y según el tribunal determinare.
Si la incongruencia o desacuerdo es de tal naturaleza que la prueba estableciere un delito distinto del imputado, no in-cluido en éste, o estableciere la comisión de un delito fuera de la competencia del tribunal, se deberá disolver el jurado y se sobreseerá el proceso.(52)
El sobreseimiento de la acción penal que permite esta regla se refiere a casos, distintos al presente, en los que se haya imputado un delito y la prueba haya demostrado la comisión de otro no incluido en aquel por el cual se le acusó. La incongruencia entre la acusación y la prueba tiene que ser de tal grado que haga imposible una convic-ción por el delito originalmente imputado, en cuyo caso el acusado no habría estado expuesto realmente a una con-vicción por el delito imputado y no habría problema para iniciar un nuevo proceso penal por el delito que verdadera-mente se cometió.(53)
En este caso, no aplica la Regla 38(d) porque no hay incongruencia alguna entre el pliego acusatorio y la prueba presentada. Al señor Ayala García se le acusó por el Artí-culo 3.3 y en el juicio se presentó evidencia sobre su viola-ción a esa disposición. El error que cometió el foro de ins-tancia al hallarlo culpable por el Artículo 3.1, que tiene elementos similares con el imputado pero no es uno menor incluido en éste, no puede resolverse sobreseyendo el pro-ceso penal en su contra en virtud de dicha regla.
Además, para que proceda la absolución del acusado se-gún la Regla 38(d) de Procedimiento Criminal, la incon-gruencia entre la acusación y la prueba tiene que ser “de tal orden que impida u obstaculice de modo significativo la preparación de la defensa o exponga al acusado a la posi-
*218 bilidad de ser enjuiciado dos veces por el mismo delito”.(54) Aquí, el señor Ayala García fue debidamente notificado de los hechos que se le imputaban y tuvo oportunidad de de-fenderse de la acusación de maltrato mediante amenaza. El expediente demuestra que todo el proceso penal se tra-mitó correctamente de acuerdo con la acusación por el Ar-tículo 3.3 y fue únicamente al emitir el fallo de culpabili-dad que se mencionó el Artículo 3.1.
La comisión del delito imputado, el de maltrato mediante amenaza, se probó más allá de duda razonable. (55) La evidencia presentada y admitida, que fue estipulada por las partes, era suficiente para una convicción de acuerdo con el delito por el cual se acusó al señor Ayala García. Claramente, al emitir el fallo de culpabilidad por el Artículo 3.1, el tribunal de instancia cometió un error de derecho que puede ser revisado por los foros apelativos.(56) Cuando el acusado solicita que se revoque la sentencia dictada en su contra debido a un error de derecho del foro de instancia, y no por insuficiencia de la prueba, está impedido de alegar luego la protección constitucional contra la doble expo-
*219 sición.(57) Corregir la sentencia posteriormente no implica una segunda oportunidad para que el Ministerio Público pruebe su caso, sino la protección del interés de la sociedad en que se le imponga la pena justa a quien se le ha probado su culpabilidad en un proceso judicial.(58)
El foro apelativo erró al absolver al señor Ayala García en lugar de modificar la sentencia para que correspondiera al delito imputado y probado, con lo que permitió que que-dara impune un acto de violencia doméstica. En ocasiones anteriores, hemos enfatizado la importancia de que los tribunales consideren con seriedad los crímenes de violencia doméstica para que la intervención judicial en este tipo de casos sea efectiva y ayude a erradicar la violencia entre las parejas, y especialmente los patrones de conducta violenta contra las mujeres tan nocivos y tan arraigados en nuestra sociedad.(59)
Por lo tanto, procede modificar la Sentencia dictada por el Tribunal de Primera Instancia para que sustituya la de-signación del delito por el cual se halló culpable al señor Ayala García, de maltrato según el Artículo 3.1 de la Ley 54 a maltrato mediante amenaza de acuerdo con el Artí-culo 3.3 de la misma ley.(60) El tiempo de prisión que el *220 señor Ayala García cumplió bajo la Sentencia revocada erróneamente por el Tribunal de Apelaciones se le deberá descontar del periodo de encarcelamiento que se le im-ponga al modificarse la Sentencia para que corresponda al delito imputado y probado.(61)
V
Por los fundamentos antes expuestos, se revoca el dicta-men del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que modifique la sen-tencia impuesta al señor Ayala García, de acuerdo con el Artículo 3.3 de la Ley 54 y lo aquí resuelto.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton disintió sin opinión escrita. El Juez Asociado Señor Martínez Torres emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Estrella Martínez. El Juez Asociado Señor Kolthoff Caraballo no intervino.

 Exposición Narrativa Estipulada de la Prueba, Apéndice, pág. 7.

 Arts. 3.2 y 3.3 de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989 (Ley 54), 8 L.P.R.A. secs. 632-633.

 Acusación presentada el 2 de julio de 2008, Expediente del Tribunal de Pri-mera Instancia NSCR200800910, pág. 2. Se enmendó el pliego acusatorio para que indicara la fecha correcta de los hechos: 12 de mayo de 2008. Véase Minuta del Juicio, 8 de septiembre de 2008, Expediente TPI, págs. 17A-17B.

 El testimonio de la agente que tomó la querella el 12 de mayo se estipuló por ser prueba acumulativa. Exposición Narrativa Estipulada de la Prueba, Apéndice, pág. 7.

 Exposición Narrativa Estipulada de la Prueba, Apéndice, págs. 6-7.

 Íd„ pág. 7.

 Art. 3.1 de la Ley 54 (8 L.P.R.A. see. 631). La minuta del juicio indica: “So-metido el caso por las partes, el tribunal encuentra al acusado culpable por infrac-ción al Art. 3.1 de Ley 54”. Minuta del Juicio, 8 de septiembre de 2008, Expediente TPI, pág. 17B. No obstante, la orden para encarcelar provisionalmente al señor Ayala García que se dictó posteriormente corresponde al cargo por el Artículo 3.3. Auto de Prisión Provisional, 6 de noviembre de 2008, Expediente TPI, pág. 21. Asi-mismo, la Minuta de la Vista de Lectura de Sentencia indica “artículo 3.3” en el epígrafe. Minuta de 9 de diciembre de 2008, Expediente TPI, pág. 22.

 La Sentencia indica que se impone “una pena de cárcel de TRES (3) AÑOS por el delito de epígrafe”. En el epígrafe se señala que el caso es por: “Art. 3.1 Ley 54 Reclasificado a Art. 3.3 Ley 54”. Sentencia, 9 de diciembre de 2008, Expediente TPI, pág. 24. Dado que el delito imputado era por el Artículo 3.3 pero en la minuta del juicio aparece que el acusado fue hallado culpable por el Artículo 3.1 y no contamos con la transcripción de los procedimientos, no queda claro si la Sentencia se dictó por violación al Artículo 3.1, reclasificado de Artículo 3.3, o si en la Sentencia se preten-dió hacer constar que, aunque se declaró la culpabilidad por el Artículo 3.1, ésta debía ser por el Artículo 3.3 imputado, y por eso el epígrafe leyó artículo 3.1 reclasi-ficado a Artículo 3.3. Sin embargo, el Tribunal de Apelaciones no hizo referencia a estas incongruencias y las partes señalan que el señor Ayala García fue sentenciado por infringir el Artículo 3.1, por lo que analizaremos el caso partiendo de la premisa de que la convicción fue por el Artículo 3.1.

 Escrito de Apelación presentado el 17 de septiembre de 2008, Apéndice, págs. 2-3; Alegato del Apelante ante el Tribunal de Apelaciones presentado el 16 de marzo de 2009, Apéndice, págs. 9-25.

 Alegato del Pueblo ante el Tribunal de Apelaciones presentado el 15 de abril de 2009, Apéndice, págs. 26-43.

 Pueblo v. Ayala García, Sentencia del Tribunal de Apelaciones KLAN20082008 de 18 de junio de 2009, Apéndice, págs. 47-62. Uno de los jueces del panel apelativo disintió sin opinión escrita.

 Moción de Reconsideración ante el Tribunal de Apelaciones presentada el 7 de julio de 2009, Apéndice, págs. 63-69.

 Pueblo v. Ayala García, Sentencia del Tribunal de Apelaciones KLAN200802008 de 18 de junio de 2009, Apéndice, págs. 71-73; Petición de certio-rari ante el Tribunal Supremo de 22 de septiembre de 2009.

 Art. II, Sec. 11, Const. P.R., L.P.R.A., Tomo 1.

 34 L.P.R.A. Ap. II, R. 35(c). Véanse: Pueblo v. Pérez Feliciano, 183 D.P.R. 1003 (2011) (Sentencia); Pueblo v. Rivera Rivera, 145 D.P.R. 366, 378 (1998); Pueblo v. Flores Betancourt, 124 D.P.R. 867, 883 (1989); Pueblo v. González Olivencia, 116 D.P.R. 614, 617-618 (1985); Pueblo v. Calviño Cereijo, 110 D.P.R. 691, 693-694 (1981); Pueblo v. Santiago Cedeño, 106 D.P.R. 663, 666 (1978).

 34 L.P.R.A. Ap. II, R. 35(d).

 E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1993, Vol. III, págs. 158 y 169. Véanse: Regla 36 de Proce-dimiento Criminal, 34 L.P.R.A. Ap. II; Pueblo v. Seda, 82 D.P.R. 719, 727 (1961).

 Pueblo v. Meléndez Cartagena, 106 D.P.R. 338, 340-341 (1977).

 Regla 147 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

 Pueblo v. Rivera Ortiz, 150 D.P.R. 457, 462-463 (2000).

 Pueblo v. Oyóla Rodríguez, 132 D.P.R. 1064, 1071 (1993); Pueblo v. Ramos López, 85 D.P.R. 576, 580 (1962).

 Pueblo v. Concepción Sánchez, 101 D.P.R. 17, 19 (1973).

 Y. Zayas, La Ley 54 y la protección de la familia puertorriqueña, Sexto Congreso Internacional sobre Derecho de Familia — Nuevas Tendencias del Derecho Familiar, 17 de octubre de 1990, págs. 2-9. Véase, también, Informe Conjunto del Sustitutivo a los P. del S. 90 y 470, 25 de junio de 1989 (Informe Conjunto), págs. 6-20.

 Exposición de Motivos, Ley 54, 1989 Leyes de Puerto Rico 222-224; Art. 1.2 de la Ley 54 (8 L.P.R.A. see. 601).

 E. Vicente, Beyond Law Reform: The Puerto Rican Experience in the Construction and Implementation of the Domestic Violence Act, 68 (Núm. 3) Rev. Jur. U.P.R. 553, 585 y 591-592 (1999).

 A. Mullender, La violencia doméstica: una nueva visión de un viejo problema (M. Jiménez Alejo, trad.), Barcelona, Ed. Paidós, 2000, págs. 47-59. Véase, también, C. Ganzenmüller Roig y otros, La violencia doméstica: regulación legal y análisis sociológico y multidisciplinar, Barcelona, Ed. Bosch, 1999. Estos autores explican: “Es frecuente la existencia de comportamientos de maltrato psicológico que social-mente sean aceptados y entren dentro de los límites de la ‘normalidad’. Algunos hombres no golpean físicamente a sus compañeras, pero las hacen víctimas cargán-dolas de reproches continuos y amenazas, lo cual las obliga a mantenerse en un continuo clima de angustia que perturba su equilibrio psicológico. Este tipo de vio-lencia conduce sistemáticamente a la depresión y a veces al suicidio”. Id. págs. 44-45.

 R.M. Silva Bonilla y otras, Hay amores que matan: la violencia contra las mujeres en la vida conyugal, Río Piedras, Ed. Huracán, 1990, págs. 40-41. Las víctimas de violencia doméstica llegan a pensar que el abuso que sufren es por culpa suya. Véase San Vicente v. Policía de P.R., 142 D.P.R. 1, 8-23 (1996), opinión de conformidad de la Jueza Asociada Señora Naveira.

 Informe Conjunto, supra, pág. 13.

 V. Garrido, Amores que matan: acoso y violencia contra las mujeres, Barcelona, Ed. Algar, 2001, págs. 44-50; Comisión para los Asuntos de la Mujer, Ponencia sobre el P. del S. 470 (Historial Legislativo de la Ley 54), 1 de junio de 1989, págs. 7-9 y 23-24.

 Informe Conjunto, pág. 11.

 Arts. 3.1-3.5, Ley 54 (8 L.P.R.A, secs. 631-635). El Artículo 2.8 establece que la violación de una orden de protección será sancionada como delito grave de tercer grado en su mitad inferior, pero no se encuentra en el Subcapítulo de Conducta Delictiva de la Ley 54. 8 L.P.R.A. sec. 628.

 El principio de legalidad prohíbe instar acciones penales por hechos que no estén expresamente definidos como delitos. Art. 2 del Código Penal de 2004 (33 L.P.R.A. sec. 4630).

 Vicente, supra, pág. 592.

 (Énfasis suplido). Art. 3.1 de la Ley 54 (8 L.P.R.A. sec. 631).

 (Énfasis suplido). Art. 3.3 de la Ley 54 (8 L.P.R.A. sec. 633).

 Memorial Explicativo, P. del S. 470 (P. de la C. 615) de 28 de abril de 1989 (Memorial Explicativo), págs. 7-8. Véase, también, Pueblo v. Lacroix Correa, 127 D.P.R. 557, 561-568 (1990), opinión disidente del Juez Asociado Señor Hernández Denton.

 Vicente, supra, págs. 571-573; Informe de la Comisión de lo Jurídico Penal sobre los Sustitutivos al P. del S. 90 y 470, Diario de Sesiones, Cámara de Representantes, 28 de junio de 1989, págs. 102-103; Memorial Explicativo, supra, págs. 1-2. Los delitos de agresión y amenazas en el Código Penal son menos graves. Arts. 121 y 188 del Código Penal de Puerto Rico, 33 L.P.R.A. secs. 4749 y 4816. Sobre los factores que se consideraron para decidir que esta conducta fuera delito grave si se cometía contra la pareja, véase Comisión para los Asuntos de la Mujer, supra, págs. 21-22.

 Arts. 2 y 4 de la Ley Núm. 480-2004 (8 L.P.R.A. secs. 631 y 633).

 66(e) del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4694(e).

 Arts. 3 y 5 de la Ley Núm. 165-2005 (8 L.P.R.A. secs. 631 y 633).

 Pueblo v. Ríos Alonso, 156 D.P.R. 428, 434-437 (2002).

 Pueblo v. Figueroa Santana, 154 D.P.R. 717, 726-731 (2001). Desde que se aprobó la Ley 54, surgió confusión sobre si la definición de violencia doméstica del artículo 1.3 se debía utilizar para analizar el Artículo 3.1. La diferencia entre estas dos disposiciones se encuentra en que la primera habla de un patrón de conducta constante y la segunda no. Art. 1.3(p) de la Ley 54 (8 L.P.R.A. sec. 602(p)). La inten-ción de la ley fue cubrir la mayor cantidad de agresiones posibles, por lo que no vislumbró que se integrara el requisito de probar varios actos violentos para que se configurara el delito de maltrato. Véanse Vicente, supra, págs. 582-586; E.L. Chiesa Aponte, Derecho penal, 71 (Núm. 2) Rev. Jur. U.P.R. 495, 495-499 (2002).

 Pueblo v. Roldán López, 158 D.P.R. 54 (2002).

 (Énfasis suplido). Art. 1.3(q) de la Ley 54 (8 L.P.R.A. sec. 602(q)).

 Informe Conjunto, pág. 6.

 (Énfasis suplido). Art. 1.3(g) de la Ley 54 (8 L.P.R.A. sec. 602(g)).

 (Énfasis suplido). Art. 1.3(j) de la Ley 54 (8 L.P.R.A. sec. 602(j)).

 (Énfasis suplido). Art. 1.3(f) de la Ley 54 (8 L.P.R.A. sec. 602(f)).

 La palabra “amenaza” no se define en la ley, por lo que se entiende que se utiliza con su acepción coloquial de dar a entender que se le quiere causar algún mal a alguien.

 Vicente, supra, pág. 587.

 Chiesa Aponte, op. cit., pág. 178.

 (Énfasis suplido). 34 L.P.R.A. Ap. II, R. 38(d).

 Chiesa Aponte, op. cit, págs. 183-184.

 Pueblo v. Santiago Cedeño, supra, pág. 667. Véanse, también: Pueblo v. Flores Betancourt, supra, págs. 883-884; Pueblo v. Cancel Peraza, 106 D.P.R. 28, 31-32 (1977); Ríos Mora v. Tribunal Superior, 95 D.P.R. 117, 123-124 (1967).

 No nos convence el argumento que hace el señor Ayala García en la alter-nativa de que el foro de instancia, al declararlo culpable por el Artículo 3.1, decidió absolverlo del cargo por maltrato mediante amenaza porque la prueba era insufi-ciente para que se determinara su culpabilidad por ese delito. Véase Alegato del Recurrido ante el Tribunal Supremo de 1 de septiembre de 2010, págs. 15-17. Si el tribunal primario lo halló culpable del Artículo 3.1, que es más abarcador y requiere elementos adicionales a los que exige el Artículo 3.3, no es posible que lo hubiera determinado porque entendió que el maltrato mediante amenaza no se cometió; me-nos aun cuando la prueba demostró que ocurrieron múltiples incidentes de maltrato psicológico y cuando el expediente sugiere que la mención del Artículo 3.1 en el fallo de culpabilidad fue un error involuntario. Además, es la convicción por un delito menor incluido la que conlleva la absolución implícita por el delito mayor por el cual se acusa. Como hemos visto, en este caso, el delito de maltrato del Artículo 3.1 por el cual se dictó el fallo de culpabilidad no es uno menor incluido en el de maltrato mediante amenaza por el cual se acusó al señor Ayala García, por lo que no habría una absolución implícita en cuanto al delito del Artículo 3.3.

 Véanse: Pueblo v. Rodríguez Maldonado, 185 D.RR. 504 (2012); Pueblo v. Colón, Castillo, 140 D.P.R. 564, 580-582 (1996).

 “Nadie será puesto en riesgo de ser castigado dos veces por el mismo delito”. Art. II, Sec. 11, Const. P.R., L.P.R.A., Tomo 1, ed. 2008, pág. 343.

 Pueblo v. Martínez Torres, 126 D.P.R. 561, 567-573 (1990); Chiesa Aponte, op. cit., 1992, Vol. II, págs. 395-408.

 Véanse, por ejemplo: Pueblo v. Rodríguez Velázquez, 152 D.P.R. 192, 204-205 (2000); Pueblo v. Rivera Morales, 133 D.P.R. 444, 469-487 (1993) (voto de conformidad de la Jueza Asociada Señora Naveira); Pueblo v. Esmurria Rosario, 117 D.P.R. 884, 890-894 (1986) (voto particular de la Jueza Asociada Señora Naveira). Véase, en general, M. Burton, Legal Responses to Domestic Violence, London y Nueva York, Ed. Routledge-Cavendish, 2008.

 Regia 213 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 213; Pueblo v. Candelario Couvertier, 100 D.P.R. 159 (1971). En caso de que, como sugieren las incongruencias en los documentos del foro de instancia, la alusión al Artículo 3.1 al declarar culpable al acusado haya sido un error, también hubiese procedido corregir la sentencia para que la convicción correspondiera al Artículo 3.3 imputado. Regla 185(b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Una persona no puede librarse de la pena que le corresponda cumplir por un delito cuya comisión haya sido probada por el hecho de que el tribunal se haya equivocado al dictar sentencia. González de Jesús v. Jefe Penitenciaría, 90 D.P.R. 31, 34-35 (1964).

 Regla 184 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.